■ 23 Realty Associates, Plaintiff, v Wayne Teigman et al., Defendants. Mark Green et al., Third-Party Plaintiffs-Appellants-Respondents, v Manhattan Apartments, Inc., Third-Party Defendant-Respondent-Appellant. State of New York, Department of State, Division of Licensing, Counterclaim Defendant-Respondent. [624 NYS2d 155] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered January 8, 1993, to the extent that it dismissed the third-party action, unanimously modified, on the law, the third-party complaint is reinstated, and otherwise affirmed, without costs.

Plaintiff is the owner of the George Washington Hotel, in the Gramercy Park section of Manhattan. The 1971 certificate of occupancy, as amended in 1987 in a manner not affecting this action, designated the building as a Class B hotel, which meant that certain amenities (maid and linen service, 24-hour

lobby staff) were required, whereas other features (individual kitchens, cooking facilities and separate charges for electrical utility fees) were prohibited. Rent increases for rent-stabilized hotel rooms are controlled by the City's Rent Guidelines Board in a manner similar to, but separate from, increases for rent-stabilized apartments. For rent-stabilization purposes, the building was classified as a hotel by the Division of Housing and Community Renewal ("DHCR").

In providing brokerage service to plaintiff, third-party defendant Manhattan Apartments, Inc. ("MAI") advertised leasehold space in the building as rent-stabilized apartments in a converted hotel, when in fact the hotel designation had never been changed. The third-party complaint alleged that these tenants thus had the worst of both worlds—they paid apartment rate rents and separate electrical utility charges, for rooms without legal kitchens or cooking facilities, and yet did not receive full hotel services. In addition to counterclaiming against plaintiff for rent overcharge refunds and injunctive relief, the third-party complaint sought a declaration that MAI, together with plaintiff, had violated the New York City Consumer Protection Law by misrepresentations which induced consumers to enter into these leases.

MAI's response was that the certificate of occupancy "erroneously" described the building as a hotel, and that plaintiff had led it to believe this was an apartment building whose units were ready to be leased. MAI further averred that it had been led to believe the party from whom plaintiff had purchased the building in 1986 had undertaken at that time to have the certificate of occupancy amended to reflect residential use on a non-transient basis, which was already the de facto situation throughout the building. On the cross motions for summary judgment, MAI cited testimony that no one—not even the tenants—ever considered the rooms it was renting to be anything but rent-stabilized studio apartments, and that what was known to have formerly been a hotel was no longer being operated as such.

It is not the de facto condition of residential tenancies which determines whether the structure is a hotel or an apartment building. That question is settled by the certificate of occupancy and by the DHCR designation. A hotel is permitted to have a mix of both traditionally transient tenants and the more permanent apartment tenants. But the owner of a rent-stabilized hotel must still apply to DHCR for reclassification of the premises in order for it to become a rent-stabilized apartment building (see, Matter of 245 Cent. Park Assocs. v

*New York State Div. of Hous. & Community Renewal,* 193 AD2d 484). Plaintiff was certainly free to make such an application, but cannot do so in a way which will retroactively deprive the tenants of protection under the law.

The issue before the IAS Court was whether residential leases should be considered within the ambit of the New York City Consumer Protection Law. The court construed the law narrowly and held that the protection of this law did not extend to the individual defendants by reason of their residential tenant status.

Administrative Code of the City of New York § 20-700 prohibits "any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services". Consumer goods and services are defined as those "which are primarily for personal, household or family purposes" (Administrative Code § 20-701 [c]). When a statute is subject to interpretation, courts will normally defer to the construction given to it by the agency responsible for its administration, provided the construction is not irrational or unreasonable *(Matter of Plaza Realty Investors & Queens Blvd. Props. Co. v New York City Conciliation & Appeals Bd.,* 111 AD2d 395, 396). The Commissioner of Consumer Affairs, as administrator of this statute, is empowered to promulgate rules and regulations to effectuate the prohibition of deceptive and unconscionable trade practices (Administrative Code § 20-702), and his rational construction of the statute in such rules and regulations is thus entitled to deference. One such regulation governs the use of the word "broker" in advertisements (6 RCNY 5-10 [b]), and even offers, as an example, a sample ad for an *apartment* (6 RCNY 5-10 [c]). A residential lease is, after all, a purchase of services from the landlord (and, by extension, his agent) *(Park W. Mgt. Corp. v Mitchell,* 47 NY2d 316, 324, *cert denied* 444 US 992). An apartment dweller is today viewed, functionally, as a consumer of housing services—as much a consumer as the purchaser of any other goods or services *(Commonwealth v Monumental Props.,* 459 Pa 450, 467-468, 329 A2d 812, 820-821).

The Department of Consumer Affairs has given notice that the offering of rental housing is a legitimate area of interest for consumer protection against deceptive advertising and misrepresentation, and we agree. A real estate broker should have a working knowledge of the legal status of the property he is marketing *(see, Amato v Rathbun Realty,* 98 NM 231, 647 P2d 433); failure to disclose this data to a purchaser may

incur liability for misrepresentation of facts, even if the information is based upon data received from the selling principal *(see, Gauerke v Rozga,* 112 Wis 2d 271, 280, n 5, 332 NW2d 804, 808; *Tennant v Lawton,* 26 Wash App 701, 615 P2d 1305). Whether MAI knew, or should have known, that the apartments it was renting were actually hotel rooms, in violation of the New York City Consumer Protection Law, is a question that should be decided by a trier of facts. Concur— Murphy, P. J., Sullivan, Wallach, Nardelli and Tom, JJ.