**Jose MALDONADO, Commissioner of the Department of Consumer Affairs of the City of New York, Plaintiff,**

v.

**COLLECTIBLES INTERNATIONAL, INC., Nicholas DiPaolo and Steve Yeager, Defendants.**

**No. 96 Civ. 4957(LAK).**

United States District Court,
S.D. New York.

July 7, 1997.

Paul A. Crotty, Gabriel Taussig, Robin Binder, Fred Cantor, Corporation Counsel of the City of New York, New York City, for Plaintiff.

Aaronson, Rappaport, Feinstein & Deutsch, New York City, for Defendant.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

The sole issue before the Court on this motion to dismiss is whether the New York

City Consumer Protection Law, N.Y.C.Admin.Code § 20–700 et seq., permits the Department of Consumer Affairs ("DCA") to bring suit against an allegedly deceptive purveyor of training and business opportunities and its celebrity endorser. For the reasons stated below, the motion to dismiss is denied.

### Facts

The facts as alleged in the complaint are as follows. Nicholas DiPaolo, the principal of Collectibles International, Inc. ("Collectibles"), a sports collectibles company, ran ads in major New York newspapers and distributed promotional literature and videos seeking to entice the public to become sports card brokers.[1] Steve Yeager, a former professional baseball player and a celebrity endorser for Collectibles, was featured in the ads and videos and made personal telephone follow up calls to interested consumers.

Collectibles, in return for a "deposit" of approximately $3,000, claimed it would provide customer "leads," viz. names of buyers of sports collectibles. as well as training and training materials and sports cards at deeply discounted prices for personal collections. The DCA has received upward of 60 consumer complaints to the effect that the literature and videos were replete with factual inaccuracies, the training was practically non-existent, consumers[2] lost their "deposits." the leads were worthless and unauthorized charges were made on consumers' credit cards. As witnessed by the handwritten consumer complaints, the victims of the alleged scam, for the most part, were unsophisticated consumers with an interest in sports who were looking for a job.

### Relevant Statutory Provisions

Section 20–700 of the Consumer Protection Law states:

"No person shall engage in any deceptive or unconscionable trade practice in the

sale, lease, rental, or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts."

"Consumer goods and services" are defined as goods and services "used primarily for personal, household, or family purposes." N.Y.C.Admin.Code § 20–701(d).

### Discussion

Yeager contends that the defendants' offerings were not "consumer goods or services" within the meaning of the statute. The Court concludes that the customer leads, vocational training and materials and sports cards defendants offered all qualify as consumer goods and services. Accordingly, the motion is dismiss is denied.

■ "Generally, statutes promoting the public good are liberally construed." N.Y.Stat. § 341 (McKinney 1971). The New York City Consumer Protection Law seeks to protect the public from deceptive and unconscionable trade practices and should be interpreted broadly. See 23 Realty Assocs. v. Teigman, 213 A.D.2d 306, 624 N.Y.S.2d 155 (1st Dep't 1995) (residential leases qualify as consumer goods under Consumer Protection Law). The Court of Appeals has stated that a court interpreting the statute should look to "the vast multitude which the statute[ was] enacted to safeguard including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 273, 401 N.Y.S.2d 182, 184, 372 N.E.2d 17, 19 (1977) (citations omitted).

■ The defendants here purportedly offered their prospects "business" training, sales leads and sports cards for their personal collections. The cards obviously were consumer goods by any definition of the term.[3]

---

1. The Court entered default judgments against DiPaolo and Collectibles for failure to comply with discovery orders.

2. The Consumer Protection Law defines "[c]onsumer" as "[a] purchaser ... of the consumer goods or services." N.Y.C.Admin Code § 20–701(d). Hence, the Court's determination that

consumer goods and services were offered by defendants renders the purchasers of those goods and services consumers within the meaning of the statute.

3. Defendants contest plaintiff's mention of sports cards in their brief as sports cards were not mentioned in the Complaint. Because the Court

The only question of any substance is whether the sales leads and training properly are so characterized.

In approaching this question, it is important to bear in mind the statute's object in defining its reach by use of the term "consumer." The Court certainly agrees with defendants that the New York City Consumer Protection Law is intended to distinguish between goods or services offered to businesses and those offered to at least certain types of individuals. The reason is plain. Business people are deemed sophisticated in their commercial dealings and thus to require less protection than others. This distinction is well known in the law. *See, e.g.,* N.Y.UNIF. COMM.CODE § 2–201(1)–(2) (McKinney 1993) (distinguishing between merchants and others). In consequence, both the language and manifest purpose of the statute quite plainly reach the sale of goods or services intended to appeal primarily to relatively unsophisticated individuals. This view is supported by *Grant v. Mother Goose Personal Management Corp.,* 115 N.Y.L.J. 19, col. 3 (Sup.Ct. N.Y. Co. June 16, 1971), which held that the statute reaches the allegedly misleading offering of the services of a photo modeling agency.

The nature of the services offered here demonstrates that they come within the core of the statute. The defendants in substance were seeking to obtain money from individuals for providing services which supposedly would have enabled their customers to set themselves up in business as entrepreneurs in the sports collectibles business. It is difficult to imagine a scheme more likely to appeal to the most unsophisticated audience to the exclusion of those better able to fend for themselves. In any case, this is a motion to dismiss for failure to state a claim upon which relief may be granted. The motion must be denied unless it is clear that the DCA can prove no facts that would entitle it to relief. Surely that cannot be said at this stage.

■ The Court reaches the same conclusion with regard to the training defendants offered. Prospective clients were informed that they would become conversant in the skills necessary to sell sports collectibles. It is axiomatic that people willing to pay money to acquire basic business skills lack those skills and are the sort of individuals that the Consumer Protection Act aims to protect. This analysis is consistent with the interpretation of similar provisions in other statutes, under which education has been regarded as a personal, family or household service. *See Gombosi v. Carteret Mortgage Corp.,* 894 F.Supp. 176, 181 (E.D.Pa.1995) ("payment of a child's college expenses is properly classified as a "personal" or "family" expense ..." under Truth In Lending Act, 15 U.S.C. § 1601). Further, the Federal Trade Commission has defined "consumer goods and services" in one regulation as "[g]oods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses of instruction or training regardless of the purpose for which they are taken." 16 C.F.R. § 429.0(b).[4] The Court therefore concludes that the vocational training at issue properly is characterized as a consumer service.[5]

would grant a request by plaintiff to amend to include the sports cards, it considers them at this time and deems the complaint amended to include them. FED.R.CIV.P. 15(a).

Defendants assert also that the term "consumer goods" is inapplicable because the cards were offered as a minor component of a package of services, thus failing to satisfy the requirement of Section 20–701(d) that goods and services be "primarily" for family, personal or household purposes. N.Y.C.ADMIN CODE § 20–701(d). This argument is mooted by the Court's determination that the leads and vocational training offered fall within the ambit of the Consumer Protection Law.

In addition, defendants misconstrue the statutory language. The word "primarily" applies to the intended use of specific goods or services. The statute does not state that a basket of accused goods and services in its entirety be primarily for personal, household or family purposes. Rather, it is proper to consider whether each component is within the Consumer Protection Law.

4. The FTC's choice of the word "including" instead of "and" suggests that the FTC considers vocational training to be encompassed by the phrase "consumer goods and services."

5. The authorities upon which defendants rely for the contrary proposition are unpersuasive. All of the Consumer Protection Law cases defendants cite allow the DCA to pursue its intended action. (Def.Mem.9) Of the other cases defendants cite,

**10**

Both sports cards and training are clearly consumer goods and services under the statute's definition. The Consumer Protection Law defines "[d]eceptive trade practice" as "[a]ny false ... or misleading oral or written statement ... made in *connection with* the sale, lease, rental or loan ... of consumer goods or services ..." N.Y.C.ADMIN.CODE § 20–701 (emphasis added). Thus. even if one assumes that the business leads were neither *goods* nor services, they would fall within the Consumer Protection Law because they were offered "in connection with" the sale of educational opportunities and sports cards.

### Conclusion

The motion to dismiss is denied.

SO ORDERED.

none addresses the provision of educational ser-  vices. (*Id.* 8, 9)