OPINION OF THE COURT
Marcy S. Friedman, J.
In this action, plaintiffs sue to enjoin defendants from “com *284 mitting deceptive trade practices in the marketing and sale of residential homes,” and to recover fines pursuant to Administrative Code of the City of New York § 20-700 et seq. (Consumer Protection Law). Defendants bring this pre-answer motion to dismiss pursuant to CPLR 3211 (a) (3) and (7). Plaintiffs cross-move to amend the complaint. Defendants contend that real estate transactions do not constitute consumer transactions within the meaning of the Consumer Protection Law, and that the original and amended complaints therefore both fail to state a cause of action.
At the outset, the court rejects defendants’ contention that dismissal is required based on a prior order of the court (Braun, J.), dated July 6, 1999, which declined to sign an order to show cause for a preliminary injunction, on the ground that sales of real estate are not covered by the Consumer Protection Law. A determination of a motion for a provisional remedy is not law of the case. (See, Credit Francais Intl. v Sociedad Financiera de Comercio, 128 Misc 2d 564 [Sup Ct, NY County 1985].) This court will accordingly reach the merits of the motion to dismiss.
The standards for review on a CPLR 3211 (a) (7) motion to dismiss are well settled. The court must accept the allegations of the complaint as true and “determine simply whether the facts alleged fit within any cognizable legal theory.” (Morone v Morone, 50 NY2d 481, 484 [1980].) If the “plaintiff is entitled to a recovery upon any reasonable view of the stated facts,” the complaint must be declared legally sufficient. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979].)
The complaint alleges that defendant Better Homes Depot, Inc. violated the New York City Consumer Protection Law by engaging in deceptive practices in connection with its “business of acquiring residential properties, usually at foreclosure sales, and then marketing and re-selling such properties to consumers.” The original complaint sets forth five causes of action, each of which pleads a different instance of allegedly deceptive conduct in connection with the resale of the properties. The first alleges that defendants “inducted] consumers to purchase a home with promises of making needed repairs and renovations, and then fail[ed] to make the promised repairs and renovations, or carr[ied] them out in a shoddy and incomplete manner.” The second alleges that defendants caused “electrical, plumbing and other repairs and renovations to be made without the required permits and without inform *285 ing consumers of the failure to obtain the required permits.” The third alleges that defendants “discouragted] homebuyers from exercising their right to retain an attorney of their choosing, and instead steer [ed] consumers to lawyers pre-selected by the defendants.” The fourth alleges that defendants offered and sold homes to consumers “at greatly inflated prices while claiming to be selling the homes at below market rates.” The fifth alleges that defendants “misled consumers by falsely suggesting that FHA involvement in the transaction would ensure satisfaction to the homebuyer,” and misrepresenting that “Better Homes Depot would assign or refer FHA approved lawyers and contractors to the consumer.”
The amended complaint repleads the causes of action of the original complaint, and alleges several additional instances of deceptive conduct. The amended complaint pleads a new fourth cause of action alleging that defendants referred home buyers to an attorney who until recently had been associated with a law firm that continued to represent defendants. It adds a new seventh cause of action alleging that defendants misled consumers with respect to the terms of their financing. Further, it adds eighth and ninth causes of action alleging, respectively, that defendants arranged for consumers to enter into home improvement contracts with contractors that were unlicensed, and that defendants “aided the commission of unlicensed home improvement activity, by repeatedly arranging for consumers to enter into contracts with unlicensed contractors” in violation of Administrative Code § 20-106 (c) (the License Enforcement Law).
The Consumer Protection Law prohibits “any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services.” (Administrative Code § 20-700.) A deceptive trade practice is defined as “[a]ny false * * * or misleading oral or written statement * * * or other representation of any kind made in connection with the sale, lease, rental or loan or in connection with the offering for sale, lease, rental, or loan of consumer goods or services.” (Administrative Code § 20-701 [a].) Consumer goods and services are defined as those “which are primarily for personal, household or family purposes.” (Administrative Code § 20-701 [c].)
In interpreting the Consumer Protection Law in order to determine whether the transactions alleged in the complaints fall within its scope, the court’s function is to ascertain and “attempt to effectuate the intent of the. Legislature.” (Patrol *286 men’s Benevolent Assn. v City of New York, 41 NY2d 205, 208 [1976].) In ascertaining such intent, the court is in turn guided by well-settled principles of statutory construction. As one Federal court held in interpreting the Consumer Protection Law: “ ‘Generally, statutes promoting the public good are liberally construed.’ N.Y. Stat. § 341 (McKinney 1971). The New York City Consumer Protection Law seeks to protect the public from deceptive and unconscionable trade practices and should be interpreted broadly.” (Maldonado v Collectibles Intl., 969 F Supp 7, 8 [SD NY 1997]; see also, Guggenheimer v Ginzburg, 43 NY2d 268 [1977].)
While the legislative intent to protect consumers from unfair trade practices appears on the face of the Consumer Protection Law, “[a]bsence of facial ambiguity is * * * rarely, if ever, conclusive” in interpreting a statute. (New York State Bankers Assn. v Albright, 38 NY2d 430, 436 [1975].) “Sound principles of statutory interpretation generally [also] require examination of a statute’s legislative history and context to determine its meaning and scope.” (Supra, at 434; Matter of Sutka v Conners, 73 NY2d 395 [1989].)
The legislative history for the Consumer Protection Law, although not extensive, leaves no doubt that the Legislature sought to confer broad jurisdiction on the Commissioner of Consumer Affairs over unfair trade practices. As stated in the report of the Committee on Codification, which recommended adoption of the law: “The purpose of this bill is to expand the jurisdiction and powers of the Commissioner of Consumer Affairs in relation to the prohibition of unfair trade practices. It represents an attempt to write into the laws of New York City a comprehensive substantive ban on all forms of consumer fraud.” (Report of City Council Comm on Codification, Proceedings of Council of City of NY, Int No. 873, Dec. 2, 1969.)
The Commissioner of the Department of Consumer Affairs urges that the Consumer Protection Law should be interpreted in a manner consistent with the comprehensive ban against unfair trade practices, so as to encompass the real estate transactions alleged in this action. “[W]here ‘the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent’ [citation omitted],” the court is not bound by the agency’s interpretation and is “ ‘free to ascertain the proper interpretation from the statutory language and legislative intent’ (Matter of Gruber [New York City Dept. of Personnel — Sweeney], 89 NY2d 225, 231-232 [other citations omitted]).” (Seittelman v Sabol, 91 NY2d 618, 625 *287 [1998].) However, even where an agency’s interpretation is not binding, it should be given due deference, provided that it is not irrational or unreasonable. (See, 23 Realty Assocs. v Teigman, 213 AD2d 306 [1st Dept 1995] [citing the Department of Consumer Affairs’ construction of the Consumer Protection Law in determining that residential leases are within its ambit].)
Here, the agency’s interpretation is consistent not only with the comprehensive ban on unfair trade practices that the Legislature intended, but also with the express terms of the Consumer Protection Law. The law contains a provision entitled “Persons excluded from this subchapter,” which exempts broadcast and print media to the extent they are disseminating advertising of third parties, and ádvertising companies to the extent they are relying on information provided by their clients. (Administrative Code § 20-705.) By its terms, the Consumer Protection Law thus exempts only those businesses which create and provide advertising services for third parties.
The courts have also interpreted the Consumer Protection Law in a broad manner that is consistent with the interpretation that the Commissioner of Consumer Affairs now advances. The most typical application of the law is to businesses which sell consumer goods. (See, Guggenheimer v Ginzburg, 43 NY2d 268, supra.) However, the law has been applied to a variety of other businesses, including professional services by an attorney to the extent they involve advertising (Aponte v Raychuk, 160 AD2d 636 [1st Dept 1990]); broker’s services in leasing residential premises (23 Realty Assocs. v Teigman, supra)-, and sale of business opportunities (i.e., vocational training and “customer leads” to enable purchasers of the services to set themselves up in business). (Maldonado v Collectibles Intl., 969 F Supp 7, supra.)
While no case has considered whether real estate sales fall with the scope of the Consumer Protection Law, the issue has been decided under General Business Law § 349, the State consumer protection statute. General Business Law § 349 (a) proscribes “[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.” While the statute by its terms includes “any business,” it is settled that it is “directed at wrongs against the consuming public,” and that parties claiming coverage under the statute must make a threshold showing that the defendant engaged in conduct that is “consumer-oriented.” (Oswego *288 Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 24-25 [1995].) General Business Law § 349 is thus closely analogous to the Consumer Protection Law. The two statutes have been treated as similar in scope. (See, Guggenheimer v Ginzburg, supra, 43 NY2d, at 272-273; Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A [F] [56], 2000 Pocket Part, at 251.)
Consistent with its purpose of “ensuring] an honest marketplace,” General Business Law § 349 has also been applied to a “broad” range of businesses. (See, Karlin v IVF Am., 93 NY2d 282, 287, 290 [1999], rearg denied 93 NY2d 989.) Significantly, General Business Law § 349 has been expressly applied to real estate sales. In particular, the statute has been held applicable to deceptive practices in connection with the advertisement and sale of condominium units (Board of Mgrs. v Bayberry Greens Assocs., 174 AD2d 595 [2d Dept 1991]), as well as to the sale of shares in a cooperative corporation. (B.S.L. One Owners Corp. v Key Intl. Mfg., 225 AD2d 643 [2d Dept 1996]; see also, Breakwaters Townhomes Assn. v Breakwaters of Buffalo, 207 AD2d 963 [4th Dept 1994].)[1] Recently, deceptive practices in connection with the design and construction of a home were held to constitute “consumer-oriented conduct” within the meaning of this statute. (Latiuk v Faber Constr. Co., 269 AD2d 820 [4th Dept 2000].)
In contending that the case law interpreting consumer transactions “specifically excludes the sale of real property,” defendants simply ignore the above authority. Defendants instead rely oii Drelich v Kenlyn Homes (86 AD2d 648 [2d Dept 1982]), a case which interpreted CPLR 4544, a consumer protection statute that is not, however, analogous to the Consumer Protection Law. CPLR 4544 prohibits the receipt in evidence of “[t]he portion of any printed contract or agreement involving a consumer transaction or a lease for space to be occupied for residential purposes” which contains print that is illegible or less than a certain type size. The Drelich Court held that a contract for the sale and construction of a one-family dwelling is “not within the scope of a consumer transaction since it is not included in the express terms of the statute in *289 question.” (Supra, at 650.) The Court reasoned that the express inclusion in the statute of leases for real property indicated that the Legislature did not intend also to extend the statute to contracts for sale of real property.
The Consumer Protection Law and General Business Law § 349, in contrast, do not distinguish between “consumer transactions” and lease transactions. Moreover, the above-cited authority interpreting these two statutes has expressly held that the consumer transactions that are covered by the statutes include not only leases but sales of real property.
Defendants’ reliance on Teller v Bill Hayes, Ltd. (213 AD2d 141 [2d Dept 1995], lv dismissed in part, denied in part 87 NY2d 937 [1996]) is also misplaced. In this case, the plaintiff sued a home improvement contractor alleging that it had misled plaintiff and overcharged her for improvements to her home. In granting summary judgment dismissing the General Business Law § 349 claim, the Court reasoned that the deceptive practices that are proscribed by the statute “may not be limited to just the parties” and that the statute requires “a showing of potential impact on consumers at large.” (Supra, at 145.) The Court cited a long line of authority that “single-shot, ‘[p]rivate contract disputes, unique to the parties * * * would not fall within the ambit of the statute.’ ” (Supra, at 146, citing Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra, 85 NY2d, at 25.)
The instant case does not concern a single house sale, or even a series of mere house sales. Rather, as alleged in the complaints, defendant Better Homes Depot, Inc. is engaged in the business of buying foreclosed homes, and refurbishing and reselling them as residential properties. As part of its business, defendant offers a package of services which is inextricably intertwined with the real estate sales. The services fall into three broad categories: defendant’s own performance of repairs to the homes, and/or referrals of buyers to home improvement contractors for the making of repairs prior to closing; referrals of buyers to attorneys for legal representation in connection with the closings; and arranging for financing for the home buyers.
These services all fall squarely within the scope of the Consumer Protection Law. Home improvements and repairs have traditionally been the subject of laws enacted to safeguard consumers. (See, Administrative Code § 20-385 et seq. [home improvement business]; B & F Bldg. Corp. v Liebig, 76 NY2d 689 [1990]; People v Empyre Inground Pools, 227 AD2d 731 [3d *290 Dept 1996].)[2] Mortgage industry practices have likewise been held subject to coverage. (Negrin v Norwest Mtge., 263 AD2d 39 [2d Dept 1999]; Schneider v Citicorp Mtge., 982 F Supp 897 [ED NY 1997].) Referral services also involve the kind of consumer-oriented conduct that the Consumer Protection Law encompasses. (See, People v Appel, 258 AD2d 957 [4th Dept 1999].)
In addition to alleging consumer-oriented services covered by the Consumer Protection Law, the complaints allege deceptive practices in connection with the sale of such services. These include false advertising or misrepresentations that the homes were sold “at below market rates” (see, Guggenheimer v Ginzburg, 43 NY2d 268, supra); representations that the contractors and attorneys to whom defendants referred home buyers were “FHA approved” (see, Administrative Code § 20-701 [a] [1] [defining deceptive trade practice to include “representations that goods or services have sponsorship (or) approval * * * that they do not have”]); failing to disclose that repairs were not made with the required permits (see, Administrative Code § 20-701 [a] [2] [defining deceptive trade practice to include “failure to state a material fact if such use deceives or tends to deceive”]); and misleading home buyers with respect to the terms of their financing. (See, Negrin v Norwest Mtge., supra.)
Unlike Teller v Bill Hayes, Ltd. (213 AD2d 141, supra), the instant case involves not a private contract dispute of the “single-shot” type, but a business engaged in selling real estate together with a package of consumer services. The complaints thus allege the consumer-oriented conduct that the Teller Court itself recognized would fall within the ambit of General Business Law § 349.
Although the courts have observed that the consumer protection statutes are “primarily intended to apply to more modest transactions” (Teller v Bill Hayes, Ltd., supra, at 146-147; New York Univ. v Continental Ins. Co., 87 NY2d 308, 321 [1995]), they have not been reluctant to apply the statutes to real estate transactions where they have, as here, involved defective practices affecting the public at large. (E.g., Board of Mgrs. v Bayberry Greens Assocs., 174 AD2d 595, supra; B.S.L. One *291 Owners Corp. v Key Intl. Mfg., 225 AD2d 643, supra; Latiuk v Faber Constr. Co., 269 AD2d 820, supra.)
Nor have the courts declined to apply the consumer protection statutes based on the existence of private remedies. Application of the Consumer Protection Law to the alleged sales of real estate will not supplant long-settled contract principles governing claims for damages for breach of contract or fraud in the inducement. The fact that the affected buyers may have independent causes of action does not preclude a separate claim against defendants for the fines and remedies provided for by the Consumer Protection Law, on the ground that defendants engaged in deceptive practices affecting the general public. (See, Karlin v IVF Am., 93 NY2d 282, supra [separate claim for informed consent does not preclude claim under General Business Law § 349 against medical service provider for deceptive advertising]; Aponte v Raychuk, 160 AD2d 636, supra [disciplinary regulations governing attorneys’ conduct do not preclude claim under Consumer Protection Law for deceptive advertising].)
This court accordingly holds that the original and amended complaints allege real estate transactions within the scope of the Consumer Protection Law, and state a cause of action against defendant Better Homes Depot, Inc. The court further holds, however, that the complaints do not state a cause of action against defendant Eric Fessler in his individual capacity.
As to defendant Fessler, the complaints merely allege that he is the president and owner of Better Homes Depot, Inc.; that he “participates in its operations on a day-to-day basis and is actively involved in its marketing and sales activities;” and that he made various representations to customers in connection with the sales of real estate. While defendant Fessler is not immune from liability on the ground that he was a corporate officer or shareholder, he cannot be held individually liable absent allegations that he engaged in “wholly independent torts * * * for personal pecuniary gain.” (Bank of N. Y. v Berisford Intl., 190 AD2d 622 [1st Dept 1993]; see, Murtha v Yonkers Child Care Assn., 45 NY2d 913 [1978]; Feigen v Advance Capital Mgt. Corp., 150 AD2d 281 [1st Dept 1989], lv dismissed in part, denied in part 74 NY2d 874.) The complaints fall far short of alleging the independent tortious conduct that is necessary for the imposition of individual liability.
Defendants’ motion is accordingly granted to the extent of *292 dismissing the complaint as to defendant Eric Fessler only. Plaintiffs’ cross motion for leave to amend the complaint is granted.

. Condominium ownership “is a form of fee ownership of property, and not a leasehold interest.” (Frisch v Bellmarc Mgt., 190 AD2d 383, 385 [1st Dept 1993].) While cooperative ownership does not involve outright fee ownership of real property, it is a form of interest in real property. (Supra, at 387.)

. Wholly ignoring its role as the seller/contractor, Better Homes Depot, Inc. disingenuously argues that as the owner of the homes at the time the home improvements were made, defendant itself, rather than the ultimate buyers, is the party entitled to the protection of the statutes regulating the practices of home improvement contractors.