Statchen v. Palmer, et al.          08-CV-128-JD  09/15/09
                 UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Carl Statchen


     v.                               Civil No. 08-cv-128-JD
                                      Opinion No. 2009 DNH 137

Jason M. Palmer, et al.


                         O R D E R


     Carl Statchen brought a civil rights action under 42 U.S.C.

§ 1983, alleging that Concord Police Officers Jason M. Palmer and

Dick A. Scott used unreasonable force in detaining him.  Statchen

also alleges a common law assault claim against Palmer and Scott,

and a claim of vicarious liability against the City of Concord.

Palmer, Scott, and Concord move for summary judgment.  Statchen

objects.

     In support of their motion, the defendants submitted

affidavits from officers Palmer and Scott, excerpts from

Statchen's deposition, copies of an acknowledgment of Statchen's

nolo contendere plea in state court to two counts of resisting

detention, and an affidavit from the prosecutor for the City of

Concord.  Statchen filed an objection, which included a statement

from a witness, excerpts from his deposition, photographs, an

internal memorandum from the Concord Police Department, and a

medical record dated June 24, 2007.  The defendants moved to

strike four of Statchen's exhibits for failure to comply with Federal Rule of Civil Procedure 56(e)(1).  The motion was granted.  Therefore, the statement, the internal memorandum, the photographs, and the memorandum will not be considered for purposes of Statchen's objection to summary judgment.

<u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. <u>See</u> <u>id.</u> at 255.

Under the local rules of this district, memoranda in support of or in opposition to a motion for summary judgment must include a concise statement of material facts supported by appropriate

2

citations to record exhibits, which are filed with the supporting or opposing memorandum. LR 7.2(b). "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party. LR 7.2(b)(2).

Background

On June 22, 2007, at approximately 9:30 a.m., Concord Police Officer Dick Scott responded to call at Concord Hospital regarding a verbally abusive and potentially intoxicated man. At the hospital, Scott encountered Carl Statchen, who appeared to be intoxicated. Scott noticed that Statchen had a black eye and when he questioned him about it, Statchen said that he had gotten into a fight the night before and indicated that his opponent looked worse than he did. Scott administered a breathalyzer, which showed that Statchen was over the legal limit for operating a motor vehicle. Scott confiscated the beer that Statchen had in his car, took his car keys, and told Statchen that he could pick up his keys at the police station. Scott also told Statchen to leave the hospital, which he did without incident.

Around 12:30 p.m. the same day, Scott and Officer Jason Palmer responded to a citizen's call regarding a man drinking behind a market in Concord. The officers found Statchen with a

3

bag of beer cans behind the market. Several of the beer cans were empty, and Statchen appeared intoxicated. Scott told Statchen that they were going to take him into protective custody and directed him to put his hands behind his back. Statchen shouted "No", threw the beef jerky he was holding to the ground, bent his knees, and crouched like a linebacker in a two-point stance. Statchen remembers bracing himself for impact from the officers, but to the officers it appeared that Statchen was taking a fighting position.

When the officers attempted to handcuff Statchen, a struggle ensued. The officers state in their affidavits that Statchen refused to put his hands behind his back when directed to do so. They grabbed his arms and tried to force them back but were unsuccessful. They yelled at Statchen to stop resisting. Statchen fell forward onto the ground, landing on his stomach. Statchen testified at his deposition that the officers tackled him and took him to the ground.

Scott put his right knee on Statchen's back to hold him down. Scott saw that Statchen had grabbed Palmer's left leg with his right arm. Scott was unable to pull Statchen's left arm back to be handcuffed and kicked Statchen's left side with his knee to force him to comply, which is a method he learned through training and experience is effective in getting a resisting

4

person to comply with a lower risk of injury. Scott and Palmer continued to yell at Statchen to stop resisting.

Palmer states that after the fall, Statchen grabbed Palmer's left leg, and Palmer hit Statchen repeatedly with a closed fist in the back of Statchen's arm to make him let go. Palmer states that his training and experience has taught him that method to force someone to release his grip. Statchen then turned his head toward Palmer's right knee with his mouth open, and Palmer thought he was going to bite his knee. Palmer responded by hitting Statchen on the left side of his head to keep him from biting. Scott punched Statchen in the back to get him to let go of Palmer's leg, and when that was unsuccessful, Palmer hit Statchen's arm with his baton three times. Scott continued to strike Statchen with his knee. Statchen let go of Palmer's leg and allowed the officers to cuff his hands behind his back.

Statchen remembers trying to protect himself with his arms, as he was being hit with knee strikes, beaten with the baton on his arm, and punched in the face, head, and back. Statchen does not dispute that he was holding Palmer's leg and tried to bite his right knee. Statchen stated in his deposition that he remembered responding with "unpleasantries" to the officers after he was subdued and while riding in the police car. The officers report that Statchen called them names and challenged them to

5

fight him one-on-one.  In the course of the struggle, Statchen received two broken ribs.

Statchen was arrested, charged with one count of resisting detention and one count of simple assault, and taken to the Concord Police Station for processing.  During the ride to the police station, Statchen was agitated and stated that things would have gone differently if it had been a one-on-one fight.  After he was booked, Scott attempted to transport Statchen to the county jail.  Statchen asked to make a phone call to secure bail money.  Scott told him that he had to be transported to the county jail first, and Statchen again asked to make a phone call.  The parties dispute the subsequent events.

Statchen claims that when he was refused a phone call, he refused to place his arms outside his cell to be cuffed.  Scott asked other officers to help, and they entered Statchen's cell together.  Scott stated in his affidavit that Statchen refused to be handcuffed and held onto the bench where he was sitting and that he and the other officers took hold of Statchen, forced his arms behind him, and put the handcuffs on him.  Statchen stated during his deposition that at least four officers rushed at him, beat and punched him, slammed him into the wall, and yelled stop resisting.  The officers got Statchen into handcuffs, and he was

6

transported to the county jail.  Based on the events in the cell, Statchen was charged with another count of resisting detention.

In January of 2008, Statchen entered a plea of nolo contendere to two counts of resisting detention as part of a plea agreement.  The charge of simple assault was placed on file pending good behavior for six months.

## Discussion

Statchen's complaint asserts that Palmer and Scott used excessive force (Count I) against him, violating his rights under the Fourth and Fourteenth Amendments,[1] and committed an assault against him (Count II).  He further claims that the City of Concord is liable for the assault under a theory of respondeat superior (Count III).  In support of their motion for summary judgment, the defendants contend that Statchen's claims are barred by the Rooker-Feldman[2] doctrine, judicial estoppel, and Heck v. Humphrey[3] because he was convicted in state court on the

---

[1]Statchen's complaint sets forth a claim under the Fourth Amendment, which is made applicable to the states through the Fourteenth Amendment.  See Martinez-Rivera v. Ramos, 498 F.3d 3, 7 n.4 (1st Cir. 2007).

[2]The Rooker-Feldman doctrine is taken from two Supreme Court cases, Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[3]Heck v. Humphrey, 512 U.S. 477 (1994).

charge of resisting detention as a result of the events of June 22, 2007. On Count I, the excessive force Fourth Amendment claim, Palmer and Scott argue that no violation of the Fourth Amendment occurred and, alternatively, that they are entitled to qualified immunity. On the assault claim, Palmer and Scott argue that their conduct was justified under RSA 627:5, the City of Concord contends that the vicarious liability claim, Count III, against it fails because the officers' conduct was justified, and the officers contend that they are immune from suit under the doctrine of official immunity.

A.    Effect of Convictions

Statchen was convicted on two counts of resisting arrest in violation of New Hampshire Revised Statutes Annotated ("RSA") 642:2.[4] The defendants argue that Statchen's state-court convictions for resisting detention bar his claims under the Rooker-Feldman doctrine, principles of judicial estoppel, and Heck v Humphrey.

---

[4] Under New Hampshire law, a person is guilty of resisting arrest if he "knowingly or purposely physically interferes with a person recognized to be a law enforcement official . . . seeking to effect an arrest or detention . . . regardless of whether there is a legal basis for the arrest." RSA 642:2.

8

## 1. Rooker-Feldman

The defendants contend that based on his convictions, it is established that Statchen knowingly resisted their efforts to detain him. They further contend that Statchen cannot base his excessive force or assault claims on an assertion that he did not resist.

The Rooker-Feldman doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments[,] rendered before the district court proceedings commenced[,] and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Statchen's claims in this case arise from the officers' actions taken while detaining him and in handcuffing him at the police station. Statchen does not claim an injury or constitutional violation arising from his convictions. The Rooker-Feldman doctrine therefore does not preclude federal review of his claim because the injury he alleges is not a result of his conviction in state court.

## 2. Judicial Estoppel

The defendants argue that Statchen is judicially estopped from arguing that he did not resist the officers' efforts to

place him into protective custody. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Zedner v. United States, 547 U.S. 489, 504 (2006) (internal quotation marks omitted). The doctrine of judicial estoppel is not clearly defined; however, courts generally consider the following factors in determining its applicability: (1) whether the arguments are clearly inconsistent, (2) whether the court adopted the first argument, which would lead to inconsistent results, and (3) whether the party's inconsistent arguments would cause an unfair advantage or detriment to the opposing party. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). In the First Circuit, the first two factors are necessary to find judicial estoppel, and the party offering inconsistent positions need not have benefitted from the court's acceptance of its first argument. Thore v. Howe, 466 F.3d 173, 182 (1st Cir. 2006).

The defendants contend that the facts alleged in Statchen's complaint are "clearly inconsistent with the facts he agreed to in the guilty pleas." Def. Mem. at 23. Statchen, however, did not plead guilty, but instead entered a plea of nolo contendere. Under New Hampshire law, a plea of nolo contendere is not an admission of guilt. See Stewart v. Bader, 154 N.H. 75, 81

10

(2006)("'[A] plea of nolo contendere in an earlier criminal prosecution will raise no estoppel, since that plea neither controverts nor confesses the facts upon which the conviction must rest.'" (ellipsis omitted) (quoting Hopps v. Utica Mut. Ins. Co., 127 N.H. 508, 511 (1985)).  Because Statchen did not admit that he resisted detention, his present claim that he did not resist is not inconsistent with his plea in state court such that judicial estoppel bars his claims.

### 3. Heck v. Humphrey

A plaintiff cannot bring a § 1983 action for damages that challenges an underlying criminal proceeding unless he first obtains an outcome favorable to him in the criminal proceeding. See Olsen v. Correiro, 189 F.3d 52, 68-69 (1st Cir. 1999).  As described by the Supreme Court:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Heck, 512 U.S. at 486-87.  Therefore, "the district court must consider whether a judgment in favor of the plaintiff would

11

necessarily imply the invalidity of his conviction or sentence" and allow the action to proceed only if "even if successful, [it] will _not_ demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." Id. at 487. By way of example, the Court noted that to succeed on a § 1983 action for a Fourth Amendment violation against the arresting officer, a plaintiff who was "convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a _lawful_ arrest," would have to establish that his arrest was _unlawful_, thereby negating a required element of the resisting arrest offense of which he was convicted. Id. at n.6.

The First Circuit has recognized that "[a] § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction and so is not barred by Heck." Thore, 466 F.3d at 180. "Even the fact that [the] defendant was convicted of _assault_ on a police officer does not, under Heck, as a matter of law _necessarily_ bar a § 1983 claim of excessive force." Id.

The tort of assault is physical contact, or the imminent apprehension of contact, with a person that is neither authorized nor privileged. See Bucci v. Essex Ins. Co., 393 F.3d 285, 297 (1st Cir. 2005); United Nat'l Ins. Co. v. Penuche's, Inc., 128

12

F.3d 28, 32 (1st Cir. 1997) (addressing assault under New Hampshire law and citing Restatement (Second) of Torts § 21 (1977)); Yale v. Town of Allenstown, 969 F. Supp. 798, 801 (D.N.H. 1997) (same).  Under New Hampshire law, law enforcement officers are authorized to use nondeadly force to the extent the officer reasonably believes it is necessary to make an arrest or to defend himself or someone else in the course of making the arrest.  RSA 627:5, I.  "[T]he standard for determining whether force is reasonable for assault and battery claims is essentially the same as the standard for determining if force is reasonable for Fourth Amendment excessive force claims."  Godette v. Stanley, 490 F. Supp. 2d 72, 80 (D. Mass. 2007) (internal quotation marks omitted).

To the extent that Statchen contends that any force was unreasonable because he was not resisting detention at the market or in his cell, that theory would negate his convictions for resisting detention.  As a result, a claim that the defendants used excessive force because he was not resisting would violate the Heck rule and is barred.  On the other hand, Statchen also appears to contend that the force used was unreasonable under the circumstances, even though he was resisting.  It is plausible, under certain circumstances, that police officers may use more

13

force than is reasonably necessary to control an individual who is resisting detention.  See Thore, 466 F.3d at 180.

Summary judgment is appropriate under Heck on Statchen's Fourth Amendment and assault claims that are premised on the theory that he was not resisting detention.  Statchen's claims that the officers used excessive force in detaining him, at the market and in his cell at the police station, despite Statchen's resistence, are not barred under Heck.

B.  Fourth Amendment Claim

Palmer and Scott argue that their actions did not violate the Fourth Amendment because they were reasonable under the circumstances.  Statchen contends that they used unreasonable force.

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007).  The inquiry is objective and seeks to determine what a reasonable officer on the scene would have found reasonable under all of the circumstances.  Id.  Reasonableness is determined by considering criteria which include "'the severity of the crime at issue,' the extent (if any) to which 'the suspect poses an immediate threat

14

to the safety of the officers or others;' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

In a similar case, Keith Rosenberg brought § 1983 claims against police officers and the city, alleging that the officers used excessive force in the course of arresting him. Rosenberg v. Homoki, 2009 WL 982146, at *1 (E.D. Pa. April 9, 2009). The circumstances that led to the charges began when Officer Homoki saw Rosenberg sitting in a parked car, recognized him due to his prior arrests, and knew that he had a suspended license. Id. at *2. When Rosenberg got out and began to walk away from the car, Homoki ordered him to stand at the back of the car and to put his hands on the trunk, and Rosenberg complied with that order. Id. According to Rosenberg, without provocation, Homoki then struck Rosenberg on the back with his baton. Id. Based on prior experiences with the police and fearing retaliation for a prior lawsuit, Rosenberg ran away. Id. Homoki chased and eventually tackled Rosenberg, pinning him down. Id. While Rosenberg was on his hands and knees, Homoki repeatedly hit him with his baton. Id. Rosenberg collapsed and was handcuffed. Id. Rosenberg suffered broken ribs as a result of being hit with the baton. Id. at 3.

15

The defendants moved for summary judgment, arguing that Homoki's use of force was reasonable under the circumstances. The court distinguished the cases cited by the defendants and denied the motion on the excessive force claim, with respect to Homoki's use of his baton, on the ground that there was a dispute as to whether Homoki hit Rosenberg before or only after he resisted arrest. Id. at *6. If the hit occurred without provocation and before resistence, the force used was objectively unreasonable. Id. In addition, the court ruled, taking the facts in Rosenberg's favor, Homoki used excessive force when he hit Rosenberg with his baton while Rosenberg was on his hands and knees and not resisting. Id. The court explained, citing cases, that while substantial force may be reasonable to overcome resistance, it was not reasonable to hit Rosenberg if he were not resisting. Id.

Conversely, when police are faced with resistance and the circumstances suggest that the uncooperative detainee might be a danger to himself or others, force necessary to effect detention is reasonable. See Flanigan v. Colchester, 171 F. Supp. 2d 361, 366 (D. Vt. 2001). In Flanigan, a man called the police to complain that his neighbor, Flanigan, was threatening him with a firearm. Id. at 362. Police officers went to Flanigan's house, where he admitted that he had confronted his neighbor with a BB

16

gun, and the officers observed that Flanigan appeared to be intoxicated. Id. When Flanigan refused a breath test, an officer told him he was being taken into protective custody. Id. at 363.

The officer asked Flanigan to put his hands behind his back for handcuffs, and Flanigan initially complied. Id. Before the handcuffs were in place, however Flanigan said no and backed away, heading toward the door of his house. Id. The officer knocked Flanigan's feet out, causing Flanigan to fall striking his shoulder, hip, and face on the ground. Id. On orders from two officers, Flanigan put his hands behind his back and was handcuffed. Id. The court granted summary judgment in the officer's favor on Flanigan's § 1983 claim of excessive force, concluding that because Flanigan was intoxicated and had access to a weapon inside his nearby house and because his injuries were not sufficiently severe to suggest excessive force, the officer's use of force was reasonable. Id. at 366.

1. Initial Detention

The circumstances in this case fall between those in Rosenberg and Flanigan. At the time Palmer and Scott encountered Statchen behind the market, he was not armed or suspected of a crime nor did he have easy access to a weapon. Statchen's

17

intoxication, his conduct at the hospital, and his story of a fight the previous day, however, indicated that Statchen could be a threat to his own safety and possibly the safety of others. The officers knew that Statchen had been intoxicated earlier in the day and saw that he was continuing to drink beer. They decided to take him into protective custody.[5]

It is established that Statchen knowingly resisted detention by pulling his arms away from Scott and Palmer and by failing to obey their commands to stop resisting. He also continued to struggle after he was taken to the ground, grabbed Palmer's leg, and threatened to bite Palmer's knee. Although there were two officers attempting to detain one man, they were unable to get Statchen's arms into the handcuffs by pulling them and so they resorted to kicking, hitting, and punching to force Statchen to comply. They explain, however, that they used the force necessary, based upon their training and experience, to get Statchen to release Palmer's leg and to comply with handcuffing. As soon as Statchen let go of Palmer's leg and agreed to be handcuffed, the officers stopped using force.

The summary judgment facts show that the officers used substantial force to subdue Statchen. Because Statchen continued

---

[5]See RSA 172-B:3. Statchen does not challenge the officers' decision to take him into protective custody.

18

to resist detention, even taking the facts in the light most favorable to him, it was reasonable for the officers to use sufficient physical force to cause Statchen to submit to detention. Statchen's conduct, struggling with the officers, grabbing Palmer's leg, and trying to bite Palmer, and his belligerent attitude toward the officers following the incident support their view that he was fighting them, not merely protecting himself.

The summary judgment record shows that the officers did not use force before it was necessary or after Statchen stopped resisting. The circumstances the officers faced required the use of substantial force during the struggle. Even if the officers' conduct constituted excessive force, however, as is discussed below, they would be entitled to qualified immunity.

2. Handcuffing Incident in Police Station[6]

Statchen was charged with resisting detention and simple assault and was held at the Concord police station during the process of booking and setting bail. Scott promised Statchen that he would be allowed to make a telephone call. When Scott told Statchen that he would be transported to the county jail,

---

[6]While Scott was involved in the handcuffing incident at the police station, no mention is made of Palmer.

19

Statchen said he would not go until he was allowed to make a telephone call. Scott told him he could make his call from the county jail.

Scott told Statchen to stand up and to put his hands out for cuffing. Statchen refused to comply and remained seated on the bench in the cell. Scott knew that Statchen was intoxicated and that he had resisted detention previously, requiring considerable force before he was subdued. Under these circumstances, some use of force would have been reasonable to get Statchen into handcuffs. Even taking Statchen's version of events as true, he was resisting, and the officers only used force until they were able to handcuff him.[7] Again, the record supports a conclusion that no Fourth Amendment violation occurred, but even if that were not the case, Scott would be entitled to qualified immunity on this claim.

C.   Qualified Immunity

Scott and Palmer contend that they are entitled to qualified immunity on Statchen's claim in Count I that they used excessive force in violation of the Fourth Amendment. The issue of

---

[7]Statchen does not identify what actions Scott took, as distinguished from the other officers called to the cell to assist.

qualified immunity generally requires a multi-step analysis. Garcia-Rubiera v. Calderon, 570 F.3d 443, 459 (1st Cir. 2009). Although the qualified immunity analysis previously has been described in three parts, id., the First Circuit has recently restated the analysis, after the decision in Pearson v. Callahan, 129 S. Ct. 808 (2009), indicating that there are only two steps, although the second step has two parts. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

The first step requires the court to determine "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Id. If a constitutional violation is alleged or shown, the court then decides "whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. Determining whether the right was "clearly established" involves two parts: establishing that the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," and, focusing on the particular facts of the case, that "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Id. The relevant inquiry for determining whether a right was clearly established at the second step "'is whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted.'" Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

It is no longer necessary to address the first step of the qualified immunity analysis, see Maldonado, 568 F.3d at 269-70, although in this case the merits of Statchen's Fourth Amendment claim are discussed above. For purposes of the second step, Scott and Palmer were on notice of the right Statchen asserts because the First Circuit's "case law supplies a crystal clear articulation of the right, grounded by the Fourth Amendment, to be free from the use of excessive force by an arresting officer." Morelli, 552 F.3d at 23. The next question is whether, if Scott and Palmer used excessive force, their actions "constituted the type and kind of erroneous judgment that a reasonable police officer under the same or similar circumstances might have made." Id. at 24. Qualified immunity protects officers whose actions fall within "the sometimes hazy border between excessive and acceptable force." Saucier v. Katz, 533 U.S. 194, 206 (2001) (internal quotation marks omitted).

In Morelli, the police set up a sting operation in a hotel to find prostitutes. Morelli, an exotic dancer, answered a call from an undercover agent to perform in a hotel room that was fitted for surveillance. Id., 552 F.3d at 15. When she arrived, the surveillance team recognized her as a known prostitute. Id.

22

Because the agent posing as her client was acting strangely, Morelli demanded her money up front, and he put the bills on the counter.  Id.  Morelli refused to undress, stating that she was there to dance, but then removed her jeans until she became suspicious that this was not a bona fide appointment.  Id. at 16. She then dressed, took a $20 bill, and left.  Id.

Morelli encountered several officers in the corridor outside the room who accused her of stealing the $20, which she gave to them.  Id.  One of the officers then tried to block her path, and when that was unsuccessful, he grabbed her wrist and yanked her around, slamming her against the wall.  Id.  He told her she had to go back to the hotel room but kept her pinned against the wall for several minutes before guiding her to the hotel room where he questioned her.  Id.  Eventually she was allowed to leave, and she immediately reported the incident to the police.  Id.  She also went to the hospital where she was found to have a first-degree shoulder separation and contusions.  Id.

Morelli brought § 1983 claims, including a claim that the officer who detained her in the corridor used excessive force. Granting summary judgment in the officer's favor, the district court held that although Morelli made out a Fourth Amendment claim, the officer was entitled to qualified immunity because a reasonable officer could have believed that the force used was

23

appropriate.  Id. at 22.  The First Circuit disagreed, concluding that because Morelli was not armed, dangerous, violent, or attempting to flee, and given the disparity in physical size between Morelli and the officer, the officer's use of force was unreasonable.  Id.

In this case, the amount and type of force used in the initial encounter between Statchen and the officers was necessary to subdue Statchen.  Statchen is a large person, and although he was not armed, the officers reasonably interpreted his initial stance as aggressive.  The struggle demonstrated that he was actively resisting their attempts to detain him.  Even if the force used fell into the hazy border between excessive and acceptable force, Scott and Palmer would be entitled to qualified immunity.

The cell incident is less clearly defined.  Assuming the facts as Statchen described in his deposition, the officers, including Scott, used considerable force to handcuff him. Statchen appears to agree, however, that he did not submit to handcuffing until subdued by the officers.  In addition, given Scott's knowledge of Statchen's intoxication and his previous resistence to handcuffing, his response with several other officers and overwhelming force was reasonable, even if more force was used than was actually necessary.  Therefore, Scott is

24

entitled to qualified immunity for his actions in the cell incident.


D.  Assault - Count II

Palmer and Scott contend that they are entitled to summary judgment on Statchen's assault claim because their use of force was authorized by RSA 627:5,I.  Alternatively, they contend that their conduct is protected by the doctrine of official immunity. Statchen disputes both defenses.

To prove a civil claim for assault, a plaintiff must show that the defendant intended to cause harmful or offensive contact with the plaintiff and put the plaintiff in apprehension that the assault would occur.  Yale, 969 F. Supp. at 801.  Under RSA 507:8-d, a person is immune from civil liability for an action that is justified by RSA 627.  RSA 627:5, I provides as follows:

> A law enforcement officer is justified in using non-
> deadly force upon another person when and to the extent
> that he reasonably believes it necessary to effect an
> arrest or detention or to prevent the escape from
> custody of an arrested or detained person, unless he
> knows that the arrest or detention is illegal, or to
> defend himself or a third person from what he
> reasonably believes to be the imminent use of non-
> deadly force encountered while attempting to effect
> such an arrest or detention or while seeking to prevent
> such an escape.

Whether an officer's belief that his use of force was reasonable is determined under an objective standard.  State v. Cunningham,

25

--- A.2d ---, 2009 WL 1975909, at *3. "A belief that is unreasonable, even though honest, will not support the defense." Id.

The parties agree that the standard under RSA 627:5,I is the same as the Fourth Amendment standard. The statute also echoes the standard for qualified immunity. Palmer and Scott have shown, based on undisputed facts, that their conduct did not violate the Fourth Amendment and that they are entitled to qualified immunity. The actions taken by Palmer and Scott in detaining Statchen were justified under RSA 627:5,I. Therefore, no assault occurred, and alternatively, Palmer and Scott would be immune from liability for Statchen's assault claim under RSA 507:8-d.

Because Palmer and Scott are entitled to summary judgment on Statchen's assault claim, based on RSA 627:5,I, the court need not consider their alternative defense of official immunity.

E.  City of Concord

In Count III, Statchen alleges that Concord is vicariously liable for the assault committed by Palmer and Scott. Under the doctrine of respondeat superior, "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment

26

when his or her tortious act injured the plaintiff." <u>Porter v. City of Manchester</u>, 155 N.H. 149, 152 (2007) (internal quotation marks omitted). If the employees' conduct was not tortious, however, the town cannot be vicariously liable. <u>See</u> <u>Dupont v. Aavid Thermal Techs., Inc.</u>, 147 N.H. 706, 714-15 (2002).

Because the summary judgment record shows that Palmer and Scott did not assault Statchen, Concord is not vicariously liable for the assault that is alleged. Concord is entitled to summary judgment in its favor.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 13) is granted on all three counts of the plaintiff's complaint.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 15, 2009

cc: Charles P. Bauer, Esquire
    Jeanne P. Herrick, Esquire
    Michael J. Sheehan, Esquire

27