# United States Court of Appeals
## For the First Circuit

No. 06-1627

CHARLES THORE,

Plaintiff, Appellant,

v.

JEFFREY HOWE; DANIEL RICHARDS; DAVID NAPOLITANO; MICHAEL J.
LYVER; PETER A. KYMALAINEN; LEROY M. JACKSON; PHILLIP J. KEARNS,
JR.; JOHN M. KELLEY; MATTHEW DIBARA; GLEN FOSSA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Paul L. Carlucci for plaintiff-appellant.
Gregg J. Corbo, with whom Joseph L. Tehan, Jr. and Kopelman
and Paige, P.C. were on brief, for defendant-appellee Jeffrey Howe.
Joseph P. Kittredge, with whom Law Offices of Timothy M. Burke
was on brief, for defendants-appellees Daniel Richards, David
Napolitano, and Michael J. Lyver.
Michael J. Kerrigan, with whom Edward T. Hinchey and Sloane &
Walsh, LLP were on brief, for defendants-appellees Peter A.
Kymalainen, Leroy M. Jackson, Phillip J. Kearns, Jr., John M.
Kelley, Matthew Dibara, and Glenn Fossa.

---

[*]    Of the Northern District of California, sitting by
designation.

October 27, 2006

**LYNCH**, **Circuit Judge**.  This suit under 42 U.S.C. § 1983 asserting excessive force and conspiracy claims raises two interesting issues not directly addressed before by this circuit. The first is whether the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), bars the civil rights claim asserting excessive force brought by plaintiff Thore, who earlier pled guilty to state criminal charges, arising from the same event, of assault with a dangerous weapon on police officers.  The second issue is whether Thore is judicially estopped from asserting facts inconsistent with the facts to which Thore agreed during the plea colloquy.  Thore admits that if he is judicially estopped from asserting facts inconsistent with the plea colloquy, then his excessive force claim cannot succeed.

On February 8, 2002, Charles Thore pled guilty in state court to several charges, including three counts of assault and battery with a dangerous weapon (to wit, a car) on three police officers, one count of assault and battery, one count of operating a motor vehicle under the influence of alcohol, one count of operating after suspension, and one count of operating to endanger. The charges stemmed from his drunken driving encounter with police officers on October 17, 2001, during which Thore was shot in the neck by Fitchburg police officer Jeffrey Howe.  Six other Fitchburg police officers and three Massachusetts state police detectives also were involved.

During his plea colloquy, Thore, who was represented by counsel, said that he agreed with an account of the facts stated by the prosecution. Thore knowingly and voluntarily pled guilty. As a result of his plea bargain, Thore received the benefit of a joint sentencing recommendation of a four-year sentence of imprisonment, which was accepted by the court. He avoided a potential ten-to-twelve-year sentence, and had the benefit of dismissal of other charges.

In August 2003, Thore brought an action in state superior court under 42 U.S.C. § 1983 against the officers; the case was removed to federal court. His original complaint alleged that Officer Howe had used excessive force in shooting him and had engaged in assault and battery. After discovery, he amended his complaint in November 2004, adding claims that six Fitchburg police officers, three Massachusetts State Police detectives (who investigated Officer Howe's use of force), and Officer Howe had all conspired to cover up the circumstances of the shooting and had maliciously abused process.

The district court entered summary judgment for all defendants in a thoughtful opinion. The court held that the doctrine of judicial estoppel barred Thore from asserting facts inconsistent with the facts to which he admitted during his plea colloquy in the Worcester Superior Court. As a result, the court reasoned, Thore's § 1983 excessive force and state law assault and

battery claims failed to overcome Officer Howe's qualified immunity. The district court also held that Heck v. Humphrey barred assertion of the § 1983 malicious abuse of process and conspiracy claims against all defendants and that, in any event, no claim was stated under § 1983 as to either malicious abuse of process or conspiracy. The court did not reach the Heck issue as to the excessive force claim.

Thore appeals, arguing that judicial estoppel should not apply to bar him from asserting inconsistent facts because he now has evidence that some of the facts asserted at the plea colloquy are not true. He also argues that Heck v. Humphrey does not bar him from asserting any of his claims. He concedes that if judicial estoppel applies, then the district court was correct in entering judgment for Officer Howe on the excessive force claim. He does not appeal the dismissal of the abuse of process claim.

## I.

Thore pled guilty to three counts of assault and battery with a deadly weapon (a car), see Mass. Gen. Laws ch. 265 § 15A(b), as well as other crimes. Under Massachusetts law, assault and battery may be proven using two alternate theories. Under the first, an assault and battery is "the intentional and unjustified use of force upon the person of another, however slight." Commonwealth v. Burno, 487 N.E. 2d 1366, 1368-69 (Mass. 1986) (quoting Commonwealth v. McCan, 178 N.E. 633, 634 (Mass. 1931))

-4-

(internal quotation marks omitted). Under the second theory, assault and battery is the "intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." Id. at 1369. In Massachusetts, assault and battery by means of a dangerous weapon "is a general intent crime, [and] there is no requirement that the Commonwealth must prove the defendant had a specific intent to injure the victim. To find the requisite intent, however, the jury must find beyond a reasonable doubt that the touching did not happen accidentally." Commonwealth v. Ford, 677 N.E. 2d 1149, 1152 (Mass. 1997) (citations omitted).

We start with the facts the prosecution recited and to which Thore agreed at his plea colloquy in state court:

> On October 17th, 2001, at approximately 7:20 p.m., Sergeant Glen Fossa of the Fitchburg police department while off duty observed a blue Volkswag[e]n operating erratically on John Fitch Highway in Fitchburg, Massachusetts. The John Fitch Highway is a public way in the city of Fitchburg. The blue Volkswag[e]n almost struck the passenger side of the vehicle occupied by Sergeant Fossa. Both vehicles stopped. The operator of the blue Volkswag[e]n, Charles Thore, the defendant, started to get out of the vehicle he was operating and began yelling at Sergeant Fossa. Sergeant Fossa observed that Mr. Thore appeared to be having a confrontation with a female passenger in his vehicle. The female passenger was later identified as Jessilyn Chabot. Mr. Thore got back in the blue Volkswag[e]n and began to drive away wildly, passing cars in the turn-only lanes of the John Fitch Highway. Sergeant Fossa reported

-5-

the blue Volkswag[e]n to the Fitchburg police department.

Sergeant John Kell[e]y and Officer Matthew Dibara responded to the John Fitch Highway. Sergeant Fossa pointed out the blue Volkswag[e]n to the responding Fitchburg officers. Sergeant Fossa observed Mr. Thore holding Miss Chabot in a headlock, and he appeared to be hitting and/or struggling with Miss Chabot. Miss Chabot reported that Mr. Thore was choking her and that he slapped her in the face twice because she was breaking up with him. Miss Chabot was pregnant with Mr. Thore's child at the time.

Officer Dibara approached the blue Volkswag[e]n and instructed Mr. Thore to please turn off the engine and step from the vehicle. Mr. Thore did not comply and eventually placed the vehicle in reverse and accelerated. Officer Dibara reached into an open window and attempted to stop the blue Volkswag[e]n out of concern for the safety of Miss Chabot. Officer Dibara held onto Mr. Thore as he was dragged somewhat and was forced to run at times to keep pace with the vehicle. Officer Dibara disengaged after about 25 feet, fearing for his life. At times throughout the incident the blue Volkswag[e]n operated by Mr. Thore came into contact with Officer Dibara.

Mr. Thore attempted to flee through the parking lot but was headed off by Sergeant Kell[e]y and Fitchburg police officer Jeffrey Howe, who were operating separate police cruisers. Mr. Thore began to strike both cruisers operated by Sergeant Kell[e]y and Officer Howe with the blue Volkswag[e]n.

At one point Officer Dibara ordered Mr. Thore to stop at gunpoint. Mr. Thore looked at Officer Dibara and stated, "Fucking shoot me." Officer Dibara re-holstered his weapon and attempted to pull Mr. Thore from the vehicle. Mr. Thore again accelerated, broke free, and struck Officer Howe's cruiser on the

-6-

driver's door, pushing Officer Howe and his cruiser into a tractor trailer truck and nearly striking Officer Dibara. Officer Dibara heard Mr. Thore's vehicle revving as Mr. Thore was apparently attempting to move the blue Volkswag[e]n in an unknown direction. Fearing for his life, and that of Officer Dibara[], Officer Howe fired three shots from his firearm at this point. One round struck Mr. Thore in the neck.

This is a matter of record; there is no disagreement that Thore agreed to these facts.

Thore argues that the facts to which he admitted are not true as to whether the officers were endangered or in fear for their lives. He argues he can prove this through the testimony of a disinterested third-party witness, one Jon Laro, the truck driver under whose truck Officer Howe's cruiser was pushed. Laro, at deposition in this case, gave a markedly different version of the events that contradicted those (a) recited in the plea colloquy and (b) contained in the two statements the police recorded on interviewing Laro, which Laro signed shortly after the event (and which fully supported the facts recited at the colloquy). At deposition, Laro said that Thore's car, a blue Volkswagen, had not struck the police cars, but that the police cars had repeatedly struck Thore's car and had him boxed in so his car could not move. The witness stated the officers were never placed in danger by Thore and that Officer Howe had no reason to shoot Thore:

They really had him stopped, pinned down when they had him up against that building to be honest with you. To me, I don't know, maybe

if I was a police officer I think I would have just shot the guy's tires.  He ain't going nowhere, you know, I don't know.  I didn't really feel there was a need to shoot the kid let's put it that way.  I know the kid wasn't right but they weren't right and two wrongs don't make a right and that's what happened here.

By contrast, the typed notes of Detective Kymalainen's interview with Laro on October 17, 2001 present a different picture of what Laro saw:

Q.  [Police] After the car hit cruiser five what did it do?
A.  [Laro] The car's engine revved and he went flying in reverse away from the police car, he turned hard right in reverse and backed into a parked car about fifteen feet maybe.  He was out of control backing up, I thought for sure he was going to hit one of the cops that was near his car.
Q.  Where were the police officers?
A.  I think there were two officers, there may have been more, but I remember they ran past my tractor towards the blue car after it struck cruiser five.  There were a couple of seconds were [sic] the car was stopped after it hit car five.  The cops ran to the car, I saw them with their guns out, when they got near the car they pointed their guns at him and yelled at the guy to get out of the car.  Those officers yelled at the man to get out, they were very loud.  I heard the officer shout several times to get out of the car.  The guy didn't get out, he just jammed it in reverse and went backwards, it was lucky nobody didn't get hit because he almost ran them over.
. . .
Q.  Prior to the shots what did you think the operator of the blue car was going to do after it struck the parked car?
A.  It was going to try and get away again, there was nothing stopping this guy, he was

-8-

like a lunatic.  I really thought the guy was
going to run those officers over.

As noted, Laro signed the statement on or about October 17, 2001. This typed interview is entirely consistent with handwritten interview notes, which Laro also signed and initialed.  Laro testified he does recall being interviewed, but denied saying a number of things that are recorded in the notes.  Thore maintains the police forged the notes as part of a cover up.

Thore argues that until Laro's deposition, he had simply relied on the reports the police had given him as to Laro's account of the events and that this induced him to plead guilty.  He says that had he known Laro's true account, he would not have pled guilty or admitted to certain facts.  He points out that he has no memory of events after being shot.  He argues there was a conspiracy by the Fitchburg and state police to misstate the evidence of the third-party witness, and thus create, after the fact, a justification for the shooting.

Thore also argues he should be permitted to prove that the police knew that he was not armed (because his girlfriend told them), that his car was boxed in by the cruisers and so his own car could not move or harm the officers, and that the officers were never endangered.  Based on those facts, he argues that under the standards of Brosseau v. Haugen, 543 U.S. 194 (2004), and Graham v. Connor, 490 U.S. 386 (1989), it was objectively unreasonable for an officer to shoot him.

II.

The order appealed from grants summary judgment to defendants. Our review of entry of summary judgment is de novo. See Nelson v. Kline, 242 F.3d 33, 34 (1st Cir. 2001). We note, however, that "summary judgment" is a bit of a misnomer here. At issue are several matters which are committed to the district court, not a jury, in the first instance. Whether the case states a viable § 1983 claim in the first place and whether the case states a viable § 1983 claim in light of Heck are issues of law for the court. Similarly, whether to apply the judicial estoppel doctrine is also an issue for the court, not the jury, to decide. See New Hampshire v. Maine, 532 U.S. 742, 750 (2001) ("[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990))). As to the application of these doctrines, there is no dispute that if plaintiff fails to state a claim, if Heck bars the claim, or if judicial estoppel binds Thore to the facts stated at the plea colloquy, then the case must be dismissed.

A. The Conspiracy Claim

The district court correctly dismissed the conspiracy count for failure to state a claim. Thore alleged in his amended complaint that Officer Howe, six other Fitchburg police officers, and three Massachusetts state police detectives conspired against him "to justify the illegal shooting . . . by Officer Jeffrey

-10-

Howe," thereby violating his "constitutional right to be free from the use of a conspiracy by persons acting under color of law." However, there is no such constitutional right, nor is there any federal law guaranteeing freedom from conspiracy.

It is important to note that "[w]hile conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement [among conspirators], an actual deprivation of a right secured by the Constitution and laws." Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980); see also Santiago v. Fenton, 891 F.2d 373, 389 (1st Cir. 1989); Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988). Thus, an allegation of conspiracy to deprive someone of, say, his constitutional right to due process states a claim under § 1983, cf. Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977), but an allegation of conspiracy to justify an illegal shooting does not.

Thore failed to identify in his amended complaint a federally protected right of which he was deprived by the alleged conspiracy. He acknowledges as much on appeal by now attempting to cast his claim as a conspiracy to deprive him of his § 1983 right of action for excessive force. In Landrigan, we "assume[d], without deciding, that [a claim alleging deprivation of a § 1983 right of action], sufficiently advanced, could have amounted to an actionable deprivation of federally protected rights." 628 F.2d at 742. Here, however, Thore's claim is not "sufficiently advanced"

-11-

to merit our consideration of this issue.  Thore has conceded that his "claim is not precisely pled"; we further find that, contrary to plaintiff's contention, the gravamen of his claim does not make out an alleged deprivation of his § 1983 right of action.  Thore merely asserted that the defendants, under color of law, conspired to justify the shooting, and that this violated his constitutional rights.  Under these circumstances, we decline to "rewrite [Thore's] complaint by inserting legal claims not mentioned therein."  Pujol v. Shearson/Am. Express, Inc., 829 F.2d 1201, 1205-06 (1st Cir. 1987) (rejecting plaintiffs' invitation to construe their complaint as containing elements of certain RICO violations when it did not state so directly).

B.  The Excessive Force Claim

Defendant Howe argues that Heck v. Humphrey bars Thore's § 1983 claim for excessive force.  He also argues that the doctrine of judicial estoppel justifies the district court's entry of summary judgment in his favor.

1.  The Heck v. Humphrey Rule

In Heck v. Humphrey, the Supreme Court held that where a § 1983 suit for damages would "necessarily imply" the invalidity of an inmate's conviction, or "necessarily imply" the invalidity of the length of any inmate's sentence, such a claim is not cognizable under § 1983 unless and until the inmate obtains favorable resolution of a challenge to his conviction.  Heck, 512 U.S. at

487. As a result, the district court must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by "negat[ing] an element of the offense of which he [was] convicted." Id. at 486 n.6. Only if a "judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence" does the court go on to ask whether that conviction or sentence has in fact been invalidated. Id. at 487.

Thore argues that his claim does not necessarily imply the invalidity of his conviction. The Supreme Court has, in many civil rights actions, including in Heck, held that a § 1983 claim is stated where there is no necessary implication of the invalidity of the conviction. See id. at 487 n.7; see also Hill v. McDonough, 126 S. Ct. 2096, 2100 (2006); Wilkinson v. Dotson, 544 U.S. 74, 82 (2005); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Muhammad v. Close, 540 U.S. 749, 753, 755 (2004).

Similarly, in Figueroa v. Rivera, 147 F.3d 77 (1st Cir. 1998), this court held that Heck did not bar a prisoner's § 1983 claim arising from alleged indifference to an inmate's medical needs, but did bar a § 1983 claim for wrongful conviction and imprisonment. Id. at 82. Notably, Figueroa also held that there are no equitable exceptions to the Heck rule. Id. at 80-81.

A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an

arrest does not necessarily call into question the validity of an underlying state conviction and so is not barred by Heck. See, e.g., VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006).

Even the fact that defendant was convicted of assault on a police officer does not, under Heck, as a matter of law necessarily bar a § 1983 claim of excessive force. See Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996); see also Ballard v. Burton, 444 F.3d 391, 399-400 (5th Cir. 2006) (holding that a state conviction for simple assault did not necessarily imply that the defendant did not use excessive force).

In this case Thore asserts two theories. The first is that he was not guilty of assault at all, and so Officer Howe's use of force was excessive. That theory is plainly barred by Heck.

The more modest second theory is that his excessive force claim need not impugn his convictions for assault and battery with a dangerous weapon in order to establish that Officer Howe used excessive force. Thore says that even if his car had previously hit the cruisers and brushed Officer Dibara's body, by the time of the shooting, Thore was stationary in a car, boxed in with nowhere to go, and posed no threat to the officers, who had been told that he had no gun.

Just as it is true that a § 1983 excessive force claim after an assault conviction is not necessarily barred by Heck, it is also true that it is not necessarily free from Heck. The

-14-

excessive force claim and the conviction may be so interrelated factually as to bar the § 1983 claim.  See, e.g., Cunningham v. Gates, 312 F.3d 1148, 1154-55 (9th Cir. 2002).

Officer Howe argues, relying on Cunningham, that this is such a case: that Thore's third conviction for assault and battery with a dangerous weapon was based on his refusal to obey commands to get out of his car, and on his gunning his engine to start to get away.  In doing so, he endangered the two officers:  Officer Dibara on foot and Officer Howe in his cruiser.  We cannot tell from the record before us whether this is so.

While we conclude that Heck does not automatically bar consideration of an excessive force claim by an individual who has been convicted of assault, the record before us does not permit a determination of the requisite relatedness.  Accordingly, we move on to consider whether Thore is barred by judicial estoppel from denying the facts he admitted in the plea colloquy.

2.  Judicial Estoppel

We provide some background on the judicial estoppel doctrine.  Before the Supreme Court addressed the use of judicial estoppel doctrine in federal courts, this court had permitted invocation of the doctrine.  See, e.g., Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 215 (1st Cir. 1987) (binding party to its prior representation that it would not pursue a claim).

In New Hampshire v. Maine, the Supreme Court held that judicial estoppel could be utilized in the federal courts. 532 U.S. at 756. The court defined judicial estoppel as a doctrine which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire, 532 U.S. at 749 (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)) (internal quotation marks omitted). Unlike the doctrine of issue preclusion, judicial estoppel does not require that the issue have been actually litigated in the prior proceeding. Id. at 748-49; 18 Moore's Federal Practice § 134.30, at 134-69 (3d ed. 2005).

In New Hampshire, the Court recognized that, although New Hampshire was equitably barred from asserting a position (concerning a river boundary) contrary to a position it had taken in earlier litigation which had culminated in a consent decree, judicial estoppel might be inappropriate when a party's prior position was based on inadvertence or mistake. New Hampshire, 532 U.S. at 753. But the Court rejected New Hampshire's "mistake" argument that it had failed to do searching historic research earlier, and that if New Hampshire had known then what it knew now, it would not have entered into the consent decree. Id. at 753-54. The Court noted that New Hampshire had had every incentive to do that research earlier. Id. at 754. The Court also noted that the state's inconsistent position would give New Hampshire an advantage

at Maine's expense. Id. at 755. Furthermore, it is clear that New Hampshire's inconsistent position presented the risk of inconsistent outcomes in the Supreme Court. The Court had, in the earlier litigation, determined for itself that New Hampshire's earlier position was consistent with the evidence, id. at 753-54, and had relied on that position in approving the earlier consent decree, id. at 752.

The contours of the judicial estoppel doctrine are not sharply defined, and there is no mechanical test for determining its applicability. See id. at 750-51. New Hampshire recognized that the purpose of the doctrine is to protect the integrity of the judicial process. Id. at 750. The Court identified several factors which inform the decision whether to apply the doctrine, but also stressed these were neither "inflexible prerequisites" or an "exhaustive formula." Id. at 751. The first factor is whether the party's later position is clearly inconsistent with its earlier position (that inconsistency is conceded in this case). The second is whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception of inconsistent court determinations, suggesting that either the first or second court was misled. The third consideration is whether an unfair advantage or detriment would be created. See id. at 750-51.

This court construed the New Hampshire decision in Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23 (1st Cir. 2004), and held that generally, judicial estoppel would not attach[1] unless:

> (1)    the estopping position and the estopped position [are] directly inconsistent; and
> (2)    the responsible party . . . succeeded in persuading a court to have accepted its prior position.

Id. at 33.  This court also rejected as a prerequisite to application of the doctrine that the party asserting the inconsistent position be shown to have benefitted from the court's acceptance of the party's initial position.[2]  Id.

----

[1]    The parties have not briefed the question of whether federal or state law on judicial estoppel should apply when the underlying case as to which estoppel is sought was a state case, plaintiff then pursued his civil rights action in state court, and the action was then removed to federal court.  We noted this issue in Alternative System Concepts, 374 F.3d at 32, but did not resolve it as state and federal law were materially the same.  The parties have assumed federal law applies, and so shall we.  See Patriot Cinemas, 834 F.2d at 215; see also Lowery v. Stovall, 92 F.3d 219, 223 n.3 (4th Cir. 1996) (holding judicial estoppel is matter of federal law).

We note that one commentator has questioned why, if state law would not judicially estop a second action in state court (and we do not know here what Massachusetts law requires), a federal court has an interest in applying the doctrine to its own proceedings.  See 18B Wright, Miller & Cooper, Federal Practice & Procedure § 4477, at 624 n.122 (2d ed. 2002).

[2]  Other circuits have articulated other criteria.  See, e.g., Carrasca v. Pomeroy, 313 F.3d 828, 835 (3d Cir. 2002) (holding that "judicial estoppel can be imposed only if: '(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2)

This case involves the particular branch of the doctrine that prohibits a party from asserting historic facts (as opposed to legal theories) that are inconsistent with historic facts the party has agreed to in a prior court proceeding.[3]  Of particular significance is that the prior proceeding was a criminal proceeding and the facts were not found by a court or jury, but were agreed to as part of a plea bargain.  We note that although judicial estoppel does not usually apply to non-judicially approved settlements, cf. In re Bankvest Capital Corp., 375 F.3d 51, 61 (1st Cir. 2004), plea agreements are certainly reviewed by a court.

As to our standard of review, the question before us is partially one of law, which we review de novo.  See United States v. Leja, 448 F.3d 86, 92 (1st Cir. 2006) ("The district court's resolution of legal questions . . . is reviewed de novo."); Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 780 (3rd Cir. 2001) (de novo review of questions of law about judicial estoppel).  The standard of review is also partially one of application of law to facts and exercise of judgment by the

---

the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity'" (quoting Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001))).

[3]  Different and very complicated issues arise when judicial estoppel is purported to apply to pure issues of law.  See Note, Judicial Estoppel and Inconsistent Positions of Law Applied to Fact and Pure Law, 89 Cornell L. Rev. 191 (2003).

district court, which we review for abuse of discretion. Alternative Sys. Concepts, 374 F.3d at 30-31 (holding that "the appropriate standard for reviewing a trial court's application of the doctrine of judicial estoppel" is abuse of discretion (emphasis added)).

a.  Guilty Pleas and Judicial Estoppel

As for the question of law, the defendants argue for a rule that admissions to facts at an earlier guilty plea colloquy by a criminal defendant should generally bind that person as a plaintiff in subsequent civil rights actions. We reject any such per se rule. There is reason for caution.

The seminal case, relied on by defendants for the proposition that judicial estoppel should, as a rule, apply to facts admitted during guilty pleas, is Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996). See, e.g., Johnson v. Linden City Corp., 405 F.3d 1065, 1069-70 (10th Cir. 2005) (relying on Lowery). In Lowery, a civil plaintiff who had pled guilty to maliciously causing bodily injury to a police officer with intent to kill sued the police for excessive use of force. 92 F.3d at 221. In oft-quoted language, the Lowery court said:

> Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, chutzpah, is too much to take. There certainly should be an estoppel in such a case.

92 F.3d at 225 (quoting Hazard, <u>Revisiting the </u>Second Restatement of Judgments<u>: Issue Preclusion and Related Problems</u>, 66 Cornell L. Rev. 564, 578 (1981)).

This language could be taken to mean that any defendant who pleads guilty and in doing so admits to certain facts is thus playing "fast and loose" if he takes an inconsistent position later, and so he should be judicially estopped. That is not our view. If "chutzpah" alone justified judicial estoppel, a great many claims would be estopped.

Courts, whether on appeal, motion for new trial, or petition for post-conviction or collateral relief, commonly address contentions that a defendant should not be bound by facts stated in a plea agreement. That being so, the mere assertion of inconsistent facts from those admitted in a plea does not strike us as inherently impugning the integrity of the judicial process. Judicial estoppel, for example, is not applicable to bar a criminal defendant from later asserting a claim based on innocence either on direct appeal or on habeas corpus, even when such a claim rests on facts that contradict the criminal defendant's in-court and sworn representations. <u>See</u> <u>Morris</u> v. <u>California</u>, 966 F.2d 448, 453-54 (9th Cir. 1991), <u>cert.</u> <u>denied</u>, 506 U.S. 831 (1992).

At least two other concerns arise in this setting with respect to whether there is any impugning of judicial integrity. The first is that guilty pleas do not necessarily establish

-21-

absolute historic facts; what is stated in a plea arrangement is an agreed-upon version of the facts that, while it avoids misrepresentation, is sufficient to support the entry of the plea. It is not uncommon for the statement of those facts to be shaped by bargaining between the parties. For example, in United States v. Yeje-Cabrera, 430 F.3d 1 (1st Cir. 2005), this court discussed extensively the issue of fact bargaining in guilty pleas; we described fact bargaining as an inevitable consequence of the process of plea bargaining. Id. at 27-28. Plea bargains benefit both the prosecution and the defense: the defendant is motivated to bargain to get lenient treatment, and the prosecution gains from bargains by saving resources and achieving efficient outcomes. Indeed, it may be the later civil rights plaintiff who seeks to apply judicial estoppel against the prosecution for statements agreed to in plea agreements. Cf. United States v. Levasseur, 846 F.2d 786, 790-95 (1st Cir. 1986) (reversing district court's application of judicial estoppel to bar government from alleging certain crimes as RICO violations); cf. also United States v. Christian, 342 F.3d 744, 748 (7th Cir. 2003) (rejecting judicial estoppel of government); Young v. Dept. of Justice, 882 F.2d 633, 639-40 (2d Cir. 1989) (considering whether judicial estoppel should apply against the government, albeit in a non-plea-agreement scenario).

-22-

Secondly, the question of judicial "acceptance" of a guilty plea may turn on the particulars of a given case. All facts recited during the plea colloquy are not necessarily "accepted" by a judge. Mass. R. Crim. P. 12(c)(5)(A), for example, precludes a judge from accepting a plea of guilty "unless [he] is satisfied that there is a factual basis for the charge." Significantly, the rule also provides that "[t]he failure of the defendant to acknowledge all of the elements of the factual basis shall not preclude a judge from accepting a guilty plea." The federal rule generally is that the facts recited "may prove more than what is charged, but not less." Christian, 342 F.3d at 748 (citing United States v. Martin, 287 F.3d 609, 621 (7th Cir. 2002)). Here, for example, Thore argues that the plea colloquy did not need to recite that officer Dibara was in fear for his life when he shot, in order to establish that Thore was guilty of assault and battery with a dangerous weapon, by automobile. Indeed, viewing the state crime as a general intent crime, all that was needed was that the officers were touched by his car and the touching was not accidental, not that Thore intended to injure the officers.

The Supreme Court has, in New Hampshire, tied the judicial-acceptance factor to the risk of inconsistent decisions from two courts. 532 U.S. at 750-51. In this context -- guilty pleas followed by § 1983 actions -- the Heck doctrine will cause

-23-

dismissal of any § 1983 case which could undermine the conviction.[4] But to say his claim may survive Heck is not to say that judicial estoppel can play no role as to facts admitted at a plea colloquy. Judicial estoppel is, after all, a doctrine of equity.

Another rationale -- avoidance of misleading the court -- has been articulated for judicial estoppel. In our view, it is wrong to think that either the defendant or the government has **necessarily** misled or made an intentional misrepresentation[5] to the court that accepted the plea when a party tries to assert a partially inconsistent version of the facts in a later civil rights action.[6] And it would be equally wrong to use the judicial estoppel doctrine automatically to foreclose genuine efforts to demonstrate the truth.

---

[4] But see Johnson, 405 F.3d at 1069-70 (analyzing issue of inconsistency between state conviction and federal civil rights case under judicial estoppel, not Heck).

[5] Of course, no relief from judicial estoppel usually is available to a party who has undermined the integrity of the judicial system by intentionally misrepresenting historic facts. Thore argues the converse: that the standard should be that he should not be held to his earlier statement until it is shown that he intentionally misled the earlier court, and there is no intentional misrepresentation at issue here. But, under Alternative System Concepts, a party is not automatically excused from judicial estoppel if the earlier statement was made in good faith. 374 F.3d at 35.

[6] As to legal theories, the Federal Rules themselves permit pleading of inconsistent theories in a single action. See Fed. R. Civ. P. 8(e)(2).

Circuit courts have been sensitive to this problem.  In Carrasca v. Pomeroy, 313 F.3d 828 (3rd Cir. 2002), the plaintiffs, who were of Hispanic descent, brought a racial profiling action against park officials alleging that the officials had applied swimming regulations differentially between Hispanic and non-Hispanic visitors.  Id. at 830, 832.  Plaintiffs had all been arrested for use of the lake and had pled guilty to state charges (though they later contended that at least one of the plaintiffs had not actually broken the regulations).  Id.  The district court granted summary judgment in favor of the park officials, id. at 830, and the court of appeals reversed and remanded for reconsideration of the application of judicial estoppel, id. at 835.  In doing so, it relied on statements in Haring v. Prosise, 462 U.S. 306, 318-19 (1983), that there are a number of reasons why a defendant might choose to plead guilty.  Carrasca, 313 F.3d at 835; see also Haring, 462 U.S. at 318-19 (noting that "a defendant's decision to plead guilty may have any number of other motivations," including shock, avoidance of financial and emotional cost, and hope for a lesser sentence).  Accordingly, we reject the notion that judicial estoppel automatically applies to facts admitted during guilty pleas.

b.  Application of Doctrine to this Case

Having rejected any per se rule that judicial estoppel always applies or never applies to facts admitted during a guilty

plea, we turn to the question of application of the doctrine to the particular facts of the case. Our review is for whether the district court abused its discretion in applying estoppel here. <u>Alternative Sys. Concepts</u>, 374 F.3d at 30-31.

We note again that Thore has conceded that his current position is directly inconsistent with facts admitted at his plea colloquy. Furthermore, based on the transcript of Thore's plea colloquy, it was reasonable for the district court to conclude that there was sufficient acceptance by the state court of the facts previously admitted to by Thore.

Thore nevertheless attempts to fit his case into well-recognized exceptions to judicial estoppel. The Supreme Court has noted that a later inconsistent assertion of fact will not necessarily give rise to judicial estoppel if a reasonable justification can be offered for a change in positions. <u>See</u> <u>New Hampshire</u>, 532 U.S. at 753, 755 (noting that inadvertence or mistake may make application of judicial estoppel inappropriate, and referencing "considerations of equity" in deciding that judicial estoppel was appropriate in that case).

The classic case of justification is "when a party's prior position was based on inadvertence or mistake." <u>Id.</u> at 753 (quoting <u>John S. Clark Co.</u> v. <u>Faggert & Frieden, P.C.</u>, 65 F.3d 26, 29 (4th Cir. 1995)) (internal quotation marks omitted); <u>see</u> <u>also</u> 18 <u>Moore's Federal Practice</u>, <u>supra</u>, § 134.33[2], at 134-74 (noting

that some courts require bad faith in order for judicial estoppel to apply).  For example, in Alternative System Concepts we recognized an exception may be available "if . . . the new, inconsistent position is the product of information neither known nor readily available to [a party] at the time the initial position was taken."  374 F.3d at 35; accord Intergen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003) (rejecting "a rule that unduly inhibits a plaintiff from appropriately adjusting its complaint either to correct errors or to accommodate facts learned during pretrial discovery").

In a somewhat analogous case, Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the Supreme Court addressed the question of whether a party's claim that she was totally disabled for SSI purposes judicially estopped her from proving an essential element of her Americans with Disabilities Act claim that she could perform the essential functions of her job (at least with reasonable accommodation).  The opinion held that the district court should require sufficient explanation of any apparent inconsistency.  Id. at 806-07.  While that opinion addressed conflicts as to legal conclusions drawn from facts, and specifically distinguished "purely factual contradictions," id. at

807, we think the model of examining the defendant's reasons for justification of the inconsistency is apt.[7]

Thore argues that his initial agreement to the facts stated at the guilty plea colloquy should not bind him because of his own debilitated condition after the shooting and because he was induced to agree to those facts by fraud[8] on the part of the police in their representations to him about what Laro said. Neither argument is enough here to establish any abuse of discretion in the district court's ruling.

Thore's argument that he truly does not recall the event because he was shot and so cannot be held to have personally remembered the details he agreed with at the colloquy is disingenuous. No evidence at all supports this theory. Even now he does not argue that <u>at the time of the plea colloquy</u>, almost four months after the shooting, he did not recall the events leading up to the shooting. At most, he has said he did not recall what happened after he was shot and before he awakened in a hospital. There is no evidence he was not competent at the time of

---

[7]   Similarly, where a witness gives a clear and unambiguous answer, he may not defeat summary judgment with a contradictory affidavit unless he gives a satisfactory explanation of why the testimony has changed. <u>Colantuoni</u> v. <u>Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994).

[8]   <u>See</u> <u>Jaffe</u> v. <u>Accredited Sur. and Cas. Co., Inc.</u>, 294 F.3d 584, 595 n.7 (4th Cir. 2002) (holding that judicial estoppel does not apply when a party's assertedly inconsistent positions stem from reliance on statements made to the court by an opponent which later prove to be untrue).

-28-

the plea. He has offered no justification for his own switch in position between the plea bargain and now on what happened before he was shot. Laro's version of the facts is irrelevant to Thore's own agreement with the recited facts.

There is also no explanation for why Thore did not attempt to talk to Laro before Thore pled guilty. That Thore did not think of it at the time is no more a justification than New Hampshire's argument that it should be excused because it did inadequate research into the historical facts during the first proceeding. Whatever Laro had to say, this was information available to Thore at the time of his plea.

As for Thore's attempt to assert reliance on the police accounts of Laro's interview, which Thore now says were fraud, a district court could consider both that the reliance was unreasonable and the evidence of fraud very weak.

There are many explanations for Laro's reversal other than that the police had engaged in a conspiracy and attributed false statements to Laro in their reports. The contemporaneous statements made to the police were signed by Laro at the time as accurate statements of the events. That he now does not have the same memory does not establish there was fraud or deception worked on Thore or on the state criminal court by the police.[9] The

---

[9] Thore also offered a statement from an accident reconstruction witness that concludes that "the vehicular evidence now available to us suggests the police were the aggressors in this

reports of the police officers, Thore's girlfriend, and the third-party witness at the time all support exactly the facts recited to the state court in the plea colloquy.[10]

Nor was it an abuse of discretion for the district court to conclude that the equities supported application of the doctrine. There is little to support the plaintiff's claim of fraud, and the defendants reasonably thought that the statements made in the plea colloquy -- that Thore's actions had placed the officers in fear of their lives -- protected them from exactly this lawsuit.

While undoubtedly cases exist in which criminal defendants should not be held to the statements they made at the time they pled guilty in a subsequent civil rights action, the district court did not abuse its discretion in deciding this was not one of those cases.

We _affirm_ the entry of judgment for defendants. Costs are awarded to defendants.

---

case." But that conclusion rests on Laro's testimony that Thore did not hit any police cars.

[10] As the defendant state officers point out, there are additional equitable reasons to apply the estoppel doctrine. Although Thore's arguments on estoppel are largely based on the truck driver's deposition, Thore filed the lawsuit a year before the truck driver made any such statements.