FILED
United States Court of Appeals
Tenth Circuit

February 20, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JACK E. BRADFORD and COLLEEN
BRADFORD,

       Plaintiffs-Appellants,

v.

KENT WIGGINS and SCOTT R.
WOMACK,

       Defendants-Appellees.

No. 06-4287

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 1:05-CV-00085-PGC)**

---

D. Bruce Oliver, D. Bruce Oliver, L.L.C., Salt Lake City, Utah, for  Plaintiffs-Appellants.

Linette B. Hutton, Winder & Haslam, P.C., Salt Lake City, Utah, for
Defendants-Appellees.

---

Before **HENRY**, Chief Judge, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

---

**PER CURIAM.**

---

Jack E. and Colleen Bradford, faced with the charge of rioting, pleaded nolo contendere in abeyance to the lesser charge of disorderly conduct under Utah Code Ann. 1953 § 76-9-102. They then brought suit under 42 U.S.C. § 1983, alleging that Deputies Kent Wiggins and Scott R. Womack unlawfully seized them and caused their unlawful arrest, false imprisonment, and prosecution in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. They also sought relief pursuant to 42 U.S.C. §§ 1981 and 1981a, along with conspiracy claims pursuant to § 1985(2), and pendent state tort claims.

The District Court granted the deputies' motion for summary judgment, finding that the Bradfords' claims are barred by judicial estoppel and qualified immunity. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.


## I. BACKGROUND

### A. Factual Background: The Confrontation Between the Bradfords and the Deputies

On August 16, 2003, Deputy Wiggins observed Debra Bradford, the Bradfords' daughter-in-law, allegedly speeding. Debra refused to stop, despite Deputy Wiggins's lights and siren, and finally pulled into the driveway of the home she shared with her spouse, Michael Bradford (Jack and Colleen Bradford's son). Debra refused to give Deputy Wiggins her driver's license or registration or get out of the car, screaming for Michael, who was inside. Michael, who has a history of weapons and assault offenses, a fact with which local police, including Deputy Wiggins, were familiar, emerged from the house screaming profanities. Deputy Wiggins instructed Michael to return inside, and

2

proceeded to call for back-up. After Michael returned inside the home, he called his mother, Colleen Bradford, and asked her to come witness the events. Deputy Wiggins's first back-up – Deputy Womack and another officer – arrived and assisted Deputy Womack in getting Debra out of the car. (DVD, Title 2, dash cam time 20:07:00.[1]) Shortly thereafter, Colleen and Jack Bradford arrived on the scene. By that time, several other armed officers and police vehicles had positioned themselves outside the home.

The videos, officer incident reports, and the Bradfords' plea hearing testimony show that the officers repeatedly ordered the Bradfords to leave. The video also shows the Bradfords animatedly waving their arms as they spoke to the officers about drawing Michael out of the residence. Michael eventually emerged from the home, approaching the officers with his hands in the air, saying, "Shoot me." Aplts' App. at 195 (Plea Hearing, dated Feb. 11, 2004). As Michael approached the police with hands still in the air, an officer then aggressively ran from the back and side of Michael, tackled him, and handcuffed him (see id. at 196; DVD, Title 1, 20:21:00). The DVD is not clear, and the parties contest exactly what occurred during Michael's take-down and arrest.

The Bradfords allege that while they were "stunned by the attack [on Michael]" they stepped aside to get a view of Michael and the officer on the ground. Aplt's Br. at 20. "A second later" they allege Deputy Wiggins started pushing them back from the scene, yelling, "Back off, back off, now! You both want to go to jail! . . . Back off!" Id. The

---

[1]The encounter was taped by the deputies' dash board cameras, and the DVD recording is part of our record.

Bradfords claim that Deputy Womack helped Deputy Wiggins in restraining them, pushing Colleen to the ground, while Deputy Wiggins body-slammed Jack. They maintain that nothing in the video suggests they "were even remotely tumultuous or violent towards anyone." Id.

Deputies Wiggins and Womack offer a very different version of events. They allege that when Michael was tackled, the Bradfords tried to push their way past the officers. Aples' Br. at 7. Deputy Womack claims that he extended his arm to prevent Ms. Bradford from getting any closer. They further state that they put Mr. Bradford in a wrist lock and took Ms. Bradford by the elbow and started pulling them away from Michael and the officers arresting him. Ms. Bradford, they claim, resisted and tripped, then fell to her backside on the ground, where another police officer placed her right arm in a twist lock and escorted her to the car. Id. at 7-8. Michael was then placed in the police car for transport, and everyone left the scene.

The dashboard camera videos from Deputy Wiggins's and Deputy Womack's cars are hard to see and have intermittent sound. However, the tapes appear to show Michael calmly coming out of the house with his hands in the air, a police officer tackling him to the ground from behind, and the Bradfords running towards their son and being pushed back, out of frame, by the police. As the district court noted, for the purposes of summary judgment, we review the evidence in the light most favorable to the Bradfords. Simpson v. Univ. of Colo., 500 F.3d 1170, 1179 (10th Cir. 2007); Aplts' App. at 402 (Dist. Ct. Order at 2, dated June 16, 2006).

4

## B. Procedural Background: The Bradfords' § 1983 action

The Box Elder County prosecutor filed an information charging the Bradfords with rioting, a third degree felony, in violation of Utah Code Ann. § 76-9-101. Following their arraignment, on February 11, 2004, the Bradfords entered no contest pleas in abeyance to disorderly conduct, in violation of Utah Code Ann. § 76-9-102. The plea agreement provided that following successful completion of twelve months' probation and payment of a fine, the charges would be dismissed.

At the plea hearing, the court inquired as to what the Bradfords had done wrong. They both admitted – albeit less than enthusiastically – that they disobeyed officers' commands to leave the area. Mr. Bradford, when asked by the judge what he had done wrong, answered, "I thought we should have left when he asked me, but I did call [Michael] out." Aplt. App. at 196-97. Ms. Bradford stated, "[The police] wanted us to get back in our car and leave. Well I'm sorry, that's my son. I'm not going to leave." Aplt. App. at 197. Thus, both admitted that the police indicated they should have left the scene.

In March 2005, following completion of the terms of the plea agreement, the Bradfords filed this § 1983 action. The Bradfords now contend that the deputies have violated and conspired to violate the Fourth, Fifth, Sixth, and Fourteenth Amendments when the deputies (1) made contact with them; (2) seized them; (3) detained them without reasonable suspicion; (4) caused their arrest/booking without probable cause; and (5) caused their prosecution without probable cause.

On June 23, 2006, the district court granted the deputies' motion for summary

5

judgment, holding the Bradfords' false arrest and baseless prosecution claims barred by judicial estoppel, and their unlawful seizure, detention, and contact claims barred by qualified immunity. The court reasoned that applying judicial estoppel is necessary here to protect the integrity of the courts under Johnson v. Lindon City Corp., 405 F.3d 1065 (10th Cir. 2005), because (1) the Bradfords' false arrest and baseless prosecution claims are "clearly inconsistent" with testimony at their plea hearing; (2) the Utah court accepted the Bradfords' plea, so judicial acceptance of their § 1983 claims would "create the perception that either the first or the second court was misled"; (3) the Bradfords "would derive an unfair advantage . . . if not estopped." Aplt's App. at 414-19 (Dist. Ct. Order at 14-19). See Johnson, 405 F.3d at 1069 (citing New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). As to qualified immunity, the district court held that the Bradfords had not met their burden of showing that the deputies violated their constitutional rights. Aplt's App. at 412 (Dist. Ct. Order at 12). Further, the court held that the Bradfords failed to plead sufficient facts to support a Fifth or Sixth Amendment violation and thus dismissed those claims outright; the Bradfords have not challenged this decision.

## II. DISCUSSION

On appeal, the Bradfords argue only two issues. They argue first, that judicial estoppel does not bar their false arrest and baseless prosecution claims, because they have consistently claimed innocence, and second, that the deputies are not entitled to qualified immunity as they clearly violated the Bradfords' Fourth Amendment rights.

We review a judicial estoppel decision for abuse of discretion.[2] Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1156 (10th Cir. 2007). "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." Id.

We review a district court's grant of summary judgment based on qualified immunity de novo, in the light most favorable to the nonmoving party. Ward v. Anderson, 494 F.3d 929, 934 (10th Cir. 2007). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

## A.  Judicial Estoppel of the False Arrest and Baseless Prosecution Claims

As noted, the district court held that judicial estoppel barred the Bradfords' claims of false arrest and baseless prosecution. Until the Supreme Court first held, in New Hampshire v. Maine, 532 U.S. at 749, that the doctrine is applicable in federal court, the Tenth Circuit had historically rejected judicial estoppel. The case on which the district

---

[2]Most circuits review appeals of summary judgment based on judicial estoppel for abuse of discretion. See, e.g., Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007); Stephens v. Tolbert, 471 F.3d 1173, 1175 (11th Cir. 2006); Thore v. Howe, 466 F.3d 173, 182 (1st Cir. 2006); Stallings v. Hussmann Corp., 447 F.3d 1041, 1046 (8th Cir. 2006); Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 599-600 (5th Cir. 2005); Lampi Corp. v. Am. Power Prods., Inc., 228 F.3d 1365, 1377 (Fed. Cir. 2000); Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108 (3d Cir. 1999); King v. Herbert J. Thomas Memorial Hosp., 159 F.3d 192, 196 (4th Cir. 1998). But see, Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004) (applying a de novo standard).

court relied – <u>Johnson v. Lindon City Corp.</u>, 405 F.3d 1065 – constitutes our first application of the doctrine following the Supreme Court's decision. The facts in <u>Johnson</u> are similar to those in the present case: Two plaintiffs entered pleas in abeyance and, in the course of pleading, admitted to certain facts that they later denied in a § 1983 claim. We held that the plaintiffs were judicially estopped from pursuing their § 1983 case against their arresting officers.

The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." <u>New Hampshire</u>, 532 U.S. at 749-50. Though there is no precise formula, in order to determine whether to apply judicial estoppel, courts typically inquire as to whether: 1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped. <u>Johnson</u>, 405 F.3d at 1069 (citing <u>New Hampshire</u>, 532 U.S. at 750). "Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution." <u>Lowery v. Stovall</u>, 92 F.3d 219, 224 (4th Cir. 1996).[3]

_____

[3]Applying judicial estoppel both narrowly and cautiously, as we must, we do not hold it to be dispositive that the Bradfords simply entered a no contest plea. <u>See</u> <u>Thore v. Howe</u>, 466 F.3d 173, 187 (1st Cir. 2006) (rejecting a per se rule that judicial estoppel always applies or

8

The first inquiry the court must answer is whether the Bradfords' § 1983 claims are clearly inconsistent with an earlier proceeding — in this case, the hearing at which they pleaded nolo contendere in abeyance. The first reason for the estoppel in <u>Johnson</u> was that the plea hearing admissions were clearly inconsistent with the § 1983 claims. So too in the Bradfords' case. At the plea hearing, during which they pleaded no contest to disorderly conduct, both Mr. and Mrs. Bradford admitted that the police asked them to leave, and they refused. Mr. Bradford said, "I thought we should have left when he asked me, but I did call [Michael] out." Aplt. App. at 196-97. Mrs. Bradford stated, "They wanted us to get back in our car and leave. Well I'm sorry, that's my son. I'm not going to leave." Aplt. App. at 197. In contrast, in the district court they made no such concessions. In fact, in their § 1983 complaint, the Bradfords claimed that no probable cause existed to arrest them. Aplt's App. at 19 (Complaint, at ¶ 41). Further, and importantly, the Bradfords now explicitly maintain that they "parked and left when ordered to." Aplt's Br. at 41. These claims are clearly inconsistent with their admission at the plea hearing that they refused to leave when ordered to.

Second, a court must determine whether the party has persuaded a court to accept its earlier position so that judicial acceptance of the inconsistent position would create the

---

never applies to facts admitted during a guilty plea). Sometimes a civil action following a plea is justified, most commonly when a party's previous position was based on a mistake. <u>Thore</u>, 466 F.3d at 185. <u>But</u> <u>see</u>, <u>Zinkand v. Brown</u>, 478 F.3d 634, 638 (4th Cir. 2007) ("[B]ad faith . . . is the determinative factor.") (internal quotation marks omitted). However, though the plea itself is not dispositive, we hold that the Bradfords' plea and their plea hearing statements that they refused the officers' requests to leave are sufficient to justify judicial estoppel in this case.

perception that either the first or the second court was misled.  <u>Johnson</u>, 405 F.3d at 1069.

The Utah court accepted the Bradfords' plea after specifically inquiring into whether they had refused the deputies' requests to leave.  Therefore, acceptance by this court of the inconsistent position the Bradfords now maintain would create the perception that one court or the other was misled.

Finally, we must determine whether the Bradfords would derive an unfair advantage on the deputies if not estopped.  <u>Id</u>.  We held in <u>Johnson</u> that by entering pleas in abeyance, the plaintiffs received a substantial benefit.  <u>Id</u>. at 1070.  In exchange for entering pleas in abeyance, the State agreed to substitute disorderly conduct charges for rioting, a third degree felony, and then to dismiss even the disorderly conduct charges as long as the Bradfords successfully completed twelve months' probation and paid a fine.  In <u>Johnson</u>, we held that a party who accepts the benefit of a such a plea and then makes inconsistent statements in a subsequent Section 1983 action would derive an unfair advantage if not estopped from pursuing these claims.  <u>Id</u>.

As the present case satisfies the three <u>New Hampshire</u> inquiries, the district court did not abuse its discretion in finding that the Bradfords, because of their plea and their plea hearing statements, are judicially estopped from pursuing their Section 1983 claims of false arrest and baseless prosecution in violation of the Fourth and Fourteenth Amendments.


**B.  Qualified Immunity from the Seizure, Detention, and Contact Claims**

In granting summary judgment to the deputies, the district court held that the Bradfords' seizure, detention, and contact claims were barred by qualified immunity. In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court set forth a definitive test for review of summary judgment motions raising that defense. Under Saucier, we must consider whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If so, we must then determine whether the right was clearly established. Id.

In order to answer the threshold question of Saucier, the court must decide whether, if the evidence is taken in the light most favorable to the party asserting the injury, the alleged facts show that the deputies violated the Bradfords' Fourth Amendment rights. The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. To establish a violation of the Fourth Amendment in a Section 1983 action, the claimant must demonstrate "both that a 'seizure' occurred and that the seizure was 'unreasonable.'" Childress v. City of Arapaho, 210 F.3d 1154, 1156 (10th Cir. 2000) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)).

A Fourth Amendment seizure occurs when a police officer restrains the liberty of an individual through physical force or show of authority. Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968). Assuming, without deciding, that the Bradfords were seized, to establish a Fourth Amendment violation, we must find that the seizure was unreasonable. Brower, 489 F.3d at 599. In determining reasonableness, courts must look to "the balancing of competing interests." Holland v. Overdorff, 268 F.3d 1179, 1185 (10th Cir. 2001). The

11

determination of reasonableness takes into account that officers are frequently forced to make split-second decisions under stressful and dangerous conditions. While there is no ready test, reasonableness is determined by balancing "the governmental interest which allegedly justifies official intrusion" against "the constitutionally protected interests of the private citizen." Terry, 392 U.S. at 20-21.

In this case, the governmental interest at stake was the successful arrest of Michael Bradford. When the Bradfords rushed toward their son upon his arrest, it was reasonable of the officers to make the split-second decision that the Bradfords' actions could possibly interfere with the arrest. Therefore the brief seizure of the Bradfords was reasonable. While the Bradfords' concern for their son's well-being may be understandable – given how aggressively he was tackled – we hold that the deputies' actions were reasonable in light of the totality of the circumstances, and the circumstances were unquestionably escalated by Debra and Michael's behavior.

Having concluded that any seizure that occurred was reasonable and therefore did not violate the Fourth Amendment, we need not address the second Saucier question to determine qualified immunity – whether the constitutional right was clearly established. See, e.g., Wilder v. Turner, 490 F.3d 810, 813 (10th Cir. 2007) ("If the officer's conduct did not violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity."). The answer to the threshold inquiry – that a constitutional right was not violated – is enough to conclude that the deputies are entitled to qualified immunity from the seizure, detention, and contact claims.

12

## III. CONCLUSION

Accordingly, because this imposition of judicial estoppel was not an abuse of discretion, and since the seizure of the Bradfords was reasonable, we AFFIRM the district court's grant of summary judgment to Deputies Wiggins and Womack.

Bradford v. Wiggins & Womack, 06-4287

**HENRY**, Chief Judge, concurring.


I write separately to note that although we do not decide the issue in the main opinion, in my view, the Bradfords were seized, albeit reasonably.

A Fourth Amendment seizure occurs when a police officer "restrains [one's] liberty." Terry v. Ohio, 392 U.S. 1, 19 (1968). The deputies claim, and the district court agreed, that the test for whether an action constitutes a Fourth Amendment seizure is more specific than the simple "restraint of liberty" – rather, they claim, it is whether the plaintiffs felt "free to leave." Aple's Br. at 17-21; Aplt's App. at 409-11 (Dist. Ct. Order at 9-11). The district court held, "A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave. . . . [N]othing in the record indicates to this court that the Bradfords were not free to leave, the touchstone for a Fourth Amendment seizure." Aplt's App. at 409-10, 411 (Dist. Ct. Order at 9-10, 11). The court reasoned that not only were the Bradfords free to leave, they were reportedly ordered to do just that.

However I do not agree that the inquiry is that simple. Seizure does not necessarily imply any physical restraint. See, e.g., United States v. Place, 462 U.S. 696, 712 n.1 (1983) (Brennan, J. concurring) (noting that although the seizure at issue in Terry was physical restraint, "the Court acknowledged . . . that 'seizures' may occur irrespective of the imposition of actual physical restraint."). Under Terry, "Only when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a

citizen may we conclude that a 'seizure' has occurred." 392 U.S. at 20 n.16 (emphasis added). Ordering the Bradfords to leave and then physically removing them from the scene no doubt restrains their liberty, if the one thing they want to do – and otherwise would have the liberty to do – is to remain on the premises.

We touched on this issue in <u>Roska ex rel. Roska v. Peterson</u>, 328 F.3d 1230 (10th Cir. 2003), addressing the narrow question before the panel, but the "free to leave" inquiry set forth in that case is not always the end of the matter. While it may have been the end of the matter as to the way Roska was argued, read any more broadly than that, the language would be at direct odds with this language from Bostick, which held that whether an individual is "free to leave" is not always dispositive:

> The state court erred, however, in focusing on whether Bostick was "free to leave" rather than on the principle that those words were intended to capture. When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and *has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter. . . .*
>
> . . . . Bostick's freedom of movement was restricted by a factor independent of police conduct- *i.e.,* by his being a passenger on a bus. Accordingly, the "free to leave" analysis on which Bostick relies is inapplicable. *In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.* This formulation follows logically from prior cases and breaks no new ground. We have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."

2

<u>Florida v. Bostick</u>, 501 U.S. 429, 435-37 (1991) (quoting <u>Michigan v. Chesternut</u>, 486 U.S. 567, 569 (1988))(emphasis added).

This broad formulation of "the principle that th[e] words ['free to leave'] were intended to capture," might very well cover a case like the Bradfords'. Taking into account all the surrounding circumstances, the Bradfords would not have felt free to ignore the police presence and go about the business of staying in front of their son's home – public property. Therefore, it is my view that they were seized under <u>Bostick</u>.

Even if a seizure did occur, as I believe it did, the deputies' actions did not violate the Bradfords' Fourth Amendment rights since that seizure was reasonable.